# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TEAM INDUSTRIAL SERVICES, INC., )
                                          Plaintiff, )
vs. ) Case No. 19-2710-JAR-KGG
                                          )
ZURICH AMERICAN INSURANCE )
COMPANY, *et al.*, )
                                Defendants. )
_____)

## ORDER ON MOTION TO AMEND

Now before the Court is the Motion to Amend Complaint filed by Plaintiff Team Industrial Services, Inc. (hereinafter "Team" or "Plaintiff"). (Doc. 58.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED**.

## BACKGROUND

Plaintiff has provided the following summary of the factual background of this case:

> Team was a contractor to defendant Westar Energy, Inc., n/k/a Evergy Kansas Central, Inc. ('Westar') to inspect, repair and certify Safety Relief Valves ('SRV') at Jeffrey Energy Center, a sub-bituminous coal-fired power plant located in Emmett Township, Pottawatomie County, about 50 miles northwest of Topeka, Kansas and seven miles northwest of St. Marys, Kansas (the 'Plant'). On June 3, 2018, two employees of Westar – Jesse Henson and Damien 'Craig' Burchett – were severely burned at the Plant and later died.

> In October 2018, Burchett's children Bailey and Dalton Burchett ('Burchetts') filed a wrongful death action against Team (and others) in federal court in Kansas. In November 2018, Most filed a wrongful death action against Team in state court in Texas as Henson's widow. Burchetts then voluntarily dismissed the action in this Court and instead filed a wrongful death action in Texas that was consolidated with Most's action. A jury trial in the Texas state court action commenced February 20, 2020.
>
> The question in this declaratory judgment action is whether Team was entitled to the benefits and coverage of an OCIP established by Westart [sic] for the Plant. It is uncontroverted that Furmanite, Inc. ('Furmanite') was part of the OCIP prior to and at the time Furmanite was acquired by [Plaintiff] in February 2016. It is further undisputed that Westar 'consolidated' Furmanite's service contract with [Plaintiff's] contract effective September 1, 2017. Finally, it is uncontroverted that Westar's premium for insurance in 2018 covering the OCIP was based on payroll for work performed by Furmanite in 2017 that [Plaintiff] was contracted to perform and did perform in 2018.

(Doc. 58, at 2.)

Defendant responds that it and Aon "never had any knowledge of [Plaintiff]." (Doc. 59, at 1-2.) Further, Defendant contends that "Westar has denied that it intended [Plaintiff] to be enrolled in the OCIP." (*Id.*, at 2.)

With the proposed amendment, Plaintiff seeks to add other parties as defendants. (Doc. 58, at 2.) Defendant does not oppose this request. (Doc. 59, at 1.) Plaintiff also seeks to add a breach of contract claim against Defendant "for failing to provide a defense in the underlying tort action in Texas that will include

the substantial attorney's fees being incurred by plaintiff in that case, as well as costs and attorney's fees being incurred in this action as a result of [Defendant's] breach of the insurance policy." (Doc. 58, at 2-3.) Defendant contends that Plaintiff is within its rights to pursue this as a reformation claim, but the "additional quasi-contact claim" would not survive a motion to dismiss. (Doc. 59, at 1-2.)

By way of further, background, the Court notes that In January 2020, Plaintiff filed a Motion for Summary Judgment (Doc. 16) which the District Court denied without prejudice on March 13, 2020 (Doc. 57). Defendant Kelli Most filed a Motion to Dismiss on January 29, 2020 (Doc. 19), which remains pending before the District Court.

## ANALYSIS

I.   **Legal Standard.**

Pursuant to Fed.R.Civ.P. 15, leave to amend should be freely given "when justice so requires." In the absence of any apparent or declared reason, such as undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment, leave to amend should be granted. ***Foman v. Davis***, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); ***Frank v. U.S. West, Inc***., 3 F.3d 1357, 1365 (10th Cir.1993). Plaintiff argues there is no undue delay for the

requested amendment. (Doc. 58, at 3.)  The Court agrees, noting no discovery has occurred and the Rule 26(f) conference has not been held.

A court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim.  *Nkemakolam v. St. John's Military School*, 890 F.Supp.2d 1260, 1261–62 (D.Kan.2012); *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir.1992); see also 6 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1487 at 642 (1990).  In light of United States Supreme Court precedent, the Tenth Circuit has restated the standard for ruling on motions to dismiss under Fed.R.Civ.P. 12(b)(6), and now looks at what is described as a "plausibility" standard. *Nkemakolam*, 890 F.Supp.2d at 1262. As this Court explained the plausibility standard in *Nkemakolam*,

> the Supreme Court has recently 'clarified' this standard, stating that 'to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' [*Robbins v. Oklahoma*, 519 F.3d 1242], at 1247 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Specifically, '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, so that '[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.' *Robbins*, 519 F.3d at 1247.  Under this standard, 'a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss.' *Smith* [*v. U.S.*], 561 F.3d [1090] at

> 1098 [ (10th Cir.2009) ].  Therefore, a plaintiff must
> 'frame a 'complaint with enough factual matter (taken as
> true) to suggest' that he or she is entitled to relief.'
> ***Robbins***, 519 F.3d at 1247 (quoting ***Twombly***, 550 U.S.
> at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929).

*Id*.  Within this context, the Court will review Plaintiff's requested amendments.

## II.     Breach of Contract Claim.

The elements of a breach of contract claim, for which Plaintiff has the burden of proof, are as follows:  "(1) execution and existence of the contract alleged in the petition; (2) sufficient consideration to support the contract; (3) performance or willingness to perform in compliance with the contract alleged; and (4) the defendant's breach insofar as such matters are in issue." ***Commercial Credit Corp. v. Harris***, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973) (citing 29 Am.Jur.2d Evidence § 140, pp. 174–175).  Defendant Zurich argues that Plaintiff cannot make a *prima facie* case for this claim because Plaintiff cannot establish the first element.  (Doc. 59, at 3.)

> According to Defendant, Plaintiff
>
>> has pled that it 'believed' that it was enrolled in Westar's
>> OCIP, only to find out that it was not.  (Doc. 58-1 at ¶¶
>> 43–44, 52, 60, 61).  [Plaintiff] cannot, on the one hand,
>> plead that there should be a contractual relationship
>> between [Plaintiff] and [Defendant] and, on the other
>> hand, plead that there actually is a contractual
>> relationship between [Plaintiff] and [Defendant] based on
>> the same facts.  There either is a contract or there is not.

(*Id.*)  Rather, according to Defendant, Plaintiff has only its contract with Westar, which does not support a contention that Plaintiff was automatically enrolled in Westar's OCIP simply by being a contractor at the Jeffrey Energy Center.  (*Id.*, at 3-4.)  The requirements of the OCIP specifically state that it "shall apply to eligible Contractors and Subcontractors who have complied with the insurance requirements, completed the enrollment process and received notification of enrollment from the OCIP Administrator. Owner reserves the right to exclude any Contractor and/or Subcontractor from the OCIP."  (Doc. 1-2, at 4.)

According to Defendant, the proposed Amended Complaint does not include allegations that Plaintiff took "steps to enroll in the OCIP, Westar authorizing [Plaintiff] to enroll in the OCIP, or [Plaintiff] having received confirmation of enrollment from the OCIP administrator, Aon."  (Doc. 59, at 4.)  Defendant argues that Plaintiff cannot "retroactively hold [Defendant] in breach for an alleged duty that [Plaintiff] has not proven that [Defendant] ever had, and which [Defendant] intends to prove it never had."  (*Id.*)

Plaintiff replies that Defendant misinterprets the intention of the proposed Amended Complaint, which "seeks to clarify that the state-law reformation claim is, in part, alternative relief … i.e., reformation is necessary only if the actual written agreement (the Liability Policy) does not accurately reflect the fact that

[Plaintiff] is already an insured entitled to coverage under the Liability Policy."

(Doc. 62, at 4.)  According to Plaintiff, the proposed breach of contract claim is

> intended to supplement … the already-asserted claim for declaratory judgment in the Complaint.  If, and when, [Plaintiff] demonstrates that it is entitled to a defense and indemnity under the Liability Policy …, then [Defendant] will be … found to have breached the parties' agreement and will owe resulting damages to [Plaintiff] for the breach of its contractual obligations … .  Regardless of whether it is because [Defendant] breached the agreement, as written, or as reformed to reflect the true agreement between the parties, the outcome will be the same – a resulting finding of breach of contract that damaged [Plaintiff].

(*Id.*)

Plaintiff continues that Defendant is misguided in its assertion that Plaintiff has failed to allege the existence of an agreement when the First Amended Complaint alleges that Defendant

> • … provided general liability coverage to certain entities that provided contractor services at various Westar facilities, including the Jefferson Energy Center (¶¶ 31-39);
>
> • The intent and effect of agreements between [Plaintiff], Furmanite, and Westar was to substitute [Plaintiff] for Furmanite under the OCIP and provide insurance coverage through the Insurance Policy issued by [Defendant] (¶¶ 28, 49-51);
>
> • 'A valid and enforceable insurance contract exists between [Defendant] as the insurer and [Plaintiff] as the insured, covering [Plaintiff's] work at the Jefferson Energy Center in 2018' (¶ 65).

(*Id*., at 5.)  Given that well-pleaded allegations are generally accepted as true in the context of a motion to amend, the Court finds that Plaintiff's proposed amendment is not futile as to the existence of a contract.  *See* **Mackley v TW Telecom Holdings, Inc.**, 296 F.R.D. 655, 660-61 (D. Kan. 2014) (holding that in analyzing the issue of "futility" in the context of a motion for leave to amend, the Rule 12(b)(6) standards apply and the party opposing the amendment bears the burden of demonstrating the "futility").

### III.     Estoppel.

To establish a claim for promissory estoppel, a "plaintiff must present evidence showing that:  '(1) the promisor reasonably intended or expected the promisee to act in reliance on the promise; (2) the promisee acted reasonably in reliance on that promise; and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice.'"  **Pritchard v. Heritage Bank**, 2013 WL 6062535 (Kan. App. Nov. 15, 2013) (citing **10th Street Medical v. State**, 42 Kan.App.2d 249, 256, 210 P.3d 670 (2009), *rev. denied* 290 Kan. 1092 (2010)).  The conduct of the promisor "must be something more than a mere refusal to perform the oral contract.  … Promissory estoppel requires both misrepresentation by the promisor and detrimental reliance by the promisee." *Id*. (citations omitted).

Defendant argues that Plaintiff's promissory estoppel claim must fail because Plaintiff "does not even allege a promise made directly by [Defendant]." (Doc. 59, at 5.)  Rather, Plaintiff alleges that Defendant "made a promise to provide coverage under the OCIP but that the promise somehow tacitly came from Westar in exchange for [Plaintiff] doing work for Westar.  (*Id.* (citing Doc. 58-1 at ¶¶ 77–78).)  In other words, Defendant argues that Plaintiff's claim must fail because "[t]here is no direct promise from [Defendant]" to Plaintiff.  (*Id.*)

Plaintiff replies that the facts following facts "set out in the proposed First Amended Complaint will demonstrate otherwise":

> • '[Defendant] Zurich reasonably expected [Plaintiff] to perform work for Westar in reliance on the promise that OCIP insurance coverage would cover [Plaintiff's] work, for which estimated payroll was used [by Defendant] to calculate, collect, and retain premium.'  (¶ 77);
>
> • '[Plaintiff] did in fact perform work for Westar [at Jefferson Energy Center] in reliance on [Defendant's] promise to provide insurance coverage under the OCIP for [Plaintiff's] work.'  (¶ 78).

(Doc. 62, at 7.)  Plaintiff argues that its "promissory estoppel claim fall squarely within Kansas law, as [it] has pleaded actual promises made with respect to [Defendant] and insurance coverage for service contractors… and an applicable policy that does not explicitly exclude coverage for the purported events that trigger coverage."  (*Id.*, at 10.)

The Court agrees.  Given that well-pleaded allegations are generally accepted as true in the context of a motion to amend, the Court finds that Plaintiff's proposed amendment is not futile as to promissory estoppel.

The Court thus **GRANTS** Plaintiff's Motion for Leave to Amend.  (Doc. 58.)  Plaintiff is instructed to file the proposed amended pleading, in the form attached to their motion, within fourteen (14) days of the date of this Order.[1]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to Amend (Doc. 58) is **GRANTED**.

IT IS SO ORDERED.

Dated this 22nd day of April, 2020, at Wichita, Kansas.

> s/ KENNETH G. GALE
> HON. KENNETH G. GALE
> U.S. MAGISTRATE JUDGE

---

[1] The Court notes that Plaintiff's proposed Amended Complaint includes a claim for unjust enrichment.  Plaintiff has indicated, however, that "having reviewed [Defendant's] opposition brief relating to the proposed claim of unjust enrichment, [Plaintiff] respectfully withdraws its request to add this particular count… ." (Doc. 62, at 10.)  As such, this portion of the proposed Amended Complaint attached to Plaintiff's motion should be removed before the amended pleading is filed.