IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| TEAM INDUSTRIAL SERVICES, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY; KELLI MOST, individually and as personal representative of the ESTATE OF JESSE HENSON; DORIAN HENSON; CECILIA HENSON; TRACY DUNNAWAY; CAROL ANNO; BAILEY BURCHETT, individually and as administrator of the ESTATE OF DAMIEN "CRAIG" BURCHETT; DALTON BURCHETT; and WESTAR ENERGY, INC., N/K/A EVERGY KANSAS CENTRAL, INC.<br><br>    Defendants. | Case No. 2:19-cv-02710 |

**FIRST AMENDED COMPLAINT**

Team Industrial Services, Inc., through its attorneys, states as follows for its First Amended Complaint:

**PARTIES AND JURISDICTION**

1. Plaintiff Team Industrial Services, Inc. ("Team") is incorporated in Texas with its principal place of business in Texas and is a citizen of Texas.

2. Defendant Zurich American Insurance Company ("Zurich") is incorporated in New York with its principal place of business in Cook County, Illinois, and is a citizen of Illinois and New York.

3. Kelli Most, individually and as personal representative of the Estate of Jesse Henson, is a plaintiff in Case 18-DCV-256883 pending in Texas District Court for Fort Bend

County, Texas (the "Texas Tort Case"), in which Team is a defendant. She and the Estate of Jesse Henson are citizens of Kansas.

4. Dorian Henson is an alleged surviving child of decedent Jesse Henson, who has intervened in the Texas Tort Case and claims an interest in the claims asserted therein. Dorian is a citizen of Arizona.

5. Cecilia Henson is an alleged surviving child of decedent Jesse Henson, who has intervened in the Texas Tort Case and claims an interest in the claims asserted therein. Cecilia is a citizen of Washington.

6. Tracy Dunnaway is an alleged wife of decedent Damien "Craig" Burchett, and an intervenor-plaintiff in the Texas Tort Case. She is a citizen of Kansas.

7. Carol Anno is the surviving parent of Damien "Craig" Burchett, and has intervened in the Texas Tort Case and claims an interest in the claims asserted therein. She is a citizen of Kansas.

8. Bailey Burchett, individually and as administrator of the Estate of Damien "Craig" Burchett, is an intervenor-plaintiff in the Texas Tort Case. Ms. Burchett and the Estate of Damien "Craig" Burchett are citizens of Kansas.

9. Dalton Burchett is an intervenor-plaintiff in the Texas Tort Case. Mr. Burchett is a citizen of Kansas.

10. Westar Energy, Inc., n/k/a Evergy Kansas Central, Inc. ("Westar"), is a corporation incorporated in Kansas with its principal place of business in Topeka, Kansas, and is therefore a citizen of Kansas.

11. The parties identified in paragraphs 3-9 of this complaint are necessary parties to this action because they have an interest in the outcome of this litigation, as they are parties in the

Texas Tort Case against Team, and proceeds from the insurance policy at issue in this case could be used to satisfy a judgment resulting from the Texas Tort Case.

12. Westar is a necessary party to this litigation because its interests may be affected by the outcome of this litigation.

13. There is complete diversity of jurisdiction between the plaintiff and all defendants.

14. The amount in controversy exceeds $75,000.

15. This Court has subject matter jurisdiction under 28 U.S.C. §1332.

## FACTS

16. Furmanite America, Inc. ("Furmanite") and Westar entered into contract No. 902236, dated August 10, 2010, for performance of certain work at Westar facilities.

17. On November 4, 2013, Westar executed a change order to contract No. 902236, which was numbered "CHANGE ORDER NO. 01."

18. Change Order No. 1 to contract 902236 is attached as <u>Exhibit A</u> to this complaint and incorporated as though fully set out in this paragraph.

19. Change Order No. 1 to contract 902236 extended the effective date of contract 902236 to December 31, 2018.

20. Change Order No. 1 modified the language of contract 902236 to include language relating to an Owner's Controlled Insurance Program.

21. An Owner's Controlled Insurance Program (abbreviated as "OCIP" throughout this complaint) is a program in which a premises or project owner enrolls entities, such as contractors and subcontractors, in a common insurance policy.

22. At all times relevant, Westar arranged, controlled, or sponsored an OCIP available to contractors for work performed at Westar properties, including the Jeffrey Energy Center in St. Mary's, Kansas.

23. Furmanite enrolled in Westar's OCIP via an enrollment application dated July 31, 2013, attached to this complaint as <u>Exhibit B</u>.

24. On or about February 29, 2016, Furmanite became a wholly-owned subsidiary of Team.

25. Prior to Team's acquisition of Furmanite, Team did not perform the same type of work at the Jeffrey Energy Center that Furmantite performed, and it was not enrolled in the OCIP. After the acquisition, Team was the surviving entity performing Furmanite's valve work at the Jeffrey Energy Center, under the name "Team-Furmanite" or later "Team."

26. On September 11, 2017, Westar executed a change order, Change Order No. 02 to contract 902228, acknowledging that Furmanite was acquired by Team and stating, "This change order will consolidate the two services contracts that Furmanite (902236) and TEAM (902228) hold with Westar Energy and become effective as of September 1, 2017." The change order is attached as <u>Exhibit C</u> to this complaint.

27. The change order attached as Exhibit C did not eliminate OCIP coverage for work at the Jeffery Energy Center, and Team did not intend or understand the change order to have that effect. Team understood and intended that the work at issue in the Texas Tort Case was covered by the OCIP.

28. The intent and effect of the change order attached as Exhibit C was to substitute Team for Furmanite with respect to the work performed at Westar properties.

29. As of September 1, 2017, contract 902236 was consolidated with the Team contract and all future work for Westar was done by Team.

30. Following September 1, 2017, Furmanite ceased to perform work as a separate entity at Westar facilities.

### The 2018-19 OCIP POLICY

31. Defendant Zurich issued OCIP policy GLO 0220071 00, with effective dates of January 1, 2018 to January 1, 2019 which provided coverage to all enrolled contractors performing work for Westar during the policy's effective dates. Upon information and belief, <u>Exhibit H</u> to this complaint is a true and accurate copy of the Zurich OCIP policy.

32. To calculate premium for the 2018 Zurich OCIP policy, Zurich used estimated payroll for anticipated maintenance work at the Westar Jeffrey Energy Center in 2018.

33. Zurich used estimated payroll that was broken down by type of work; the payroll did not identify individual contractors who performed the work.

34. Zurich used estimated payroll for valve work that Furmanite performed in 2017 and that Team contracted to perform and did perform for Westar in 2018, following Team's acquisition of Furmanite and the consolidation of the Furmanite and Team contracts (see Exhibit C)

35. Zurich charged and collected Westar premium for the OCIP policy based on estimated payroll for anticipated valve work Furmanite had performed in 2017 and Team was contracted to perform and did perform for Westar at the Jeffrey Energy Center in 2018.

36. Upon information and belief, Westar paid the premium Zurich charged for the OCIP policy, including premium based on estimated payroll for anticipated valve work that Furmanite had performed in 2017 and Team was contracted to perform and did perform for Westar at the Jeffrey Energy Center in 2018.

37. Upon information and belief, Zurich accepted and retained payment of OCIP policy premium based on estimated payroll for anticipated valve work that Furmanite had performed in 2017 and Team was contracted to perform and did perform for Westar at the Jeffrey Energy Center in 2018..

38. Team performed valve work for Westar at the Jeffrey Energy Center in 2018 with the understanding that it had insurance coverage under the 2018 Zurich OCIP, and in reliance on such coverage.

39. During the 2018 policy period, Team submitted actual payroll for valve work performed at the Jeffrey Energy Center, as required of contractors enrolled in the OCIP who performed work for Westar.

### The 2018 Accident

40. In or about April 2018, Team performed certain work for Westar at the Jeffrey Energy Center in St. Mary's, Kansas.

41. On or about June 3, 2018, a fatal accident occurred at the Jeffrey Energy Center in St. Mary's, Kansas.

42. As a result of the accident, Team has been named a defendant in the Texas Tort Case, which alleges Team's work for Westar in April of 2018 was negligent.

### Denial of Coverage

43. On August 3, 2018, having been named as a defendant in two wrongful death lawsuits stemming from the June 4, 2018 accident,[1] Team tendered defense to Zurich based on its believed enrollment in the OCIP. Exhibit D to this complaint is the tender letter.

---

[1] All claims have subsequently been joined together in the Texas Tort Case.

44. On October 10, 2018, Zurich denied Team's tender on the grounds that Team was not enrolled in the OCIP. The denial letter is attached as <u>Exhibit E</u>.

45. Subsequent correspondence between Zurich and Team revealed that Zurich enrolled Furmanite but not Team in the OCIP. See attached <u>Exhibit F</u> (November 30, 2018 correspondence) and <u>Exhibit G</u> (June 5, 2019 correspondence). Zurich reiterated its coverage denial in Exhibit G.

### Mutual Mistake and Contract Reformation

46. Westar and Team understood Team and not Furmanite would perform all work for Westar effective September 1, 2017, including during the Zurich 2018-19 policy period.

47. Westar and Team intended Team, as the contractor performing certain covered valve work at the Westar facility, to be enrolled in the Zurich OCIP for the policy period of January 1, 2018 to January 1, 2019.

48. Zurich intended to cover valve work under the 2018 OCIP,, for which Zurich calculated and collected premium based on payroll for work Furmanite had performed in 2017 and Team was contracted to perform and did perform for Westar at the Jeffrey Energy Center in 2018.

49. Zurich and Westar intended to enroll in the OCIP contractors who performed work for Westar for which Westar submitted payroll details to Zurich for the calculation of OCIP policy premium.

50. Zurich and Westar intended OCIP coverage to be provided in exchange for premiums paid by Westar and accepted by Zurich.

51. Team was the intended enrollee in the Zurich OCIP for the policy period of January 1, 2018 to January 1, 2019.

52.     By mutual mistake, Furmanite was enrolled in the Zurich OCIP instead of Team, despite the fact that Furmanite's rights and responsibilities had been consolidated with Team four months before the Zurich policy incepted, despite the fact that OCIP premium was calculated, paid, and accepted based on estimated payroll for Team's anticipated valve work for Westar in 2018, and despite the fact that Furmanite had no payroll to report and Team actually reported payroll to Westar for the OCIP

53.     Team is entitled to coverage under the Zurich OCIP policy and the Zurich OCIP policy should be reformed to reflect Team and not Furmanite as an enrolled contractor.

## COUNT I

## 28 U.S.C. § 2201
## DECLARATORY JUDGMENT

54.     Team incorporates and realleges the preceding paragraphs as though fully set out here.

55.     28 U.S.C. §2201 permits courts to declare the rights and other legal relations of any interested party seeking such declaration in cases of actual controversy within its jurisdiction.

56.     28 U.S.C. §2202 and this Court's inherent powers of equity permit this Court to award further necessary relief based on a declaratory judgment or decree.

57.     An actual controversy exists between Team and Zurich and the other defendant parties in interest, concerning whether Team is entitled to be enrolled in and receive insurance coverage under the 2018 Zurich OCIP for liabilities arising from Team's operations in Kansas for Westar, including Team's right to defense and indemnity from Zurich in the pending Texas Tort Case.

## COUNT II

### CONTRACT REFORMATION

58. Team incorporates and realleges the preceding paragraphs as though fully set out here.

59. There was an antecedent agreement between Team and Zurich that the 2018 Zurich OCIP would provide coverage for Team's work at Westar's Jeffrey Energy Center because estimated payroll for Team's anticipated work was used to calculate the OCIP premium, which premium was charged, collected, and retained by Zurich.

60. In memorializing the agreement for Zurich to provide OCIP coverage for the valve work Team would perform for Westar in 2018, Furmanite was erroneously enrolled under the 2018 OCIP instead of Team.

61. The enrollment of Furmanite instead of Team in the 2018 Zurich OCIP was a mistake that did not result from fraud or inequitable conduct by any party.

62. The mistake was mutual between Team and Zurich, because both intended Team's work for which estimated payroll was used to calculate premium to be covered under the OCIP.

63. The 2018 Zurich OCIP documents should be reformed to reflect Team and not Furmanite as the enrolled entity in the 2018 OCIP.

## COUNT III

### BREACH OF CONTRACT

64. Team incorporates and realleges the preceding paragraphs as though fully set out here.

65. A valid and enforceable insurance contract exists between Zurich as the insurer and Team as the insured, covering Team's work at the Jeffrey Energy Center in 2018, for which Zurich

received and accepted adequate consideration in the form of premium based on Team's work for Westar.

66. Team has fully performed all of its obligations under that insurance contract.

67. Zurich has failed and refused to defend Team in the Texas Tort Case, in breach of the insurance contract.

68. As a result of Zurich's breach, Team has incurred and continues to incur damages, including the cost of defending the Texas Tort Case, which damages are in excess of $75,000.

69. Zurich is therefore liable to Team for all such damages.

## COUNT V

## PROMISSORY ESTOPPEL

70. Team incorporates and realleges the preceding paragraphs as though fully set out here.

71. In the alternative to Counts II and III, *supra*, Zurich reasonably expected Team to perform work for Westar in reliance on the promise that OCIP insurance coverage would cover Team's work, for which estimated payroll was used to calculate, collect, and retain premium.

72. Team did in fact perform work for Westar in reliance on Zurich's promise to provide insurance coverage under the OCIP for Team's work.

73. Zurich has now denied coverage for Team under the OCIP, including a failure and refusal to defend Team in the Texas Tort Case, therefore damaging Team in an amount in excess of $75,000 and resulting in substantial injustice.

74. As a result of the foregoing, Team has no adequate remedy at law.

WHEREFORE, Plaintiff Team Industrial Services, Inc. respectfully requests this Court enter an order:

    a. Declaring that via Change Order 02 to Contract 902228, the parties intended that Team Industrial Services, Inc. would be substituted for Furmanite in all regards relating to Westar, including as enrollee in the Zurich OCIP;

    b. Declaring that Team Industrial Services, Inc. is entitled to defense and indemnity for claims arising from the subject June 4, 2018 accident, including all claims asserted in the Texas Tort case, under Zurich Policy GLO 0220071 00;

    c. Alternatively, reforming Zurich Policy GLO 0220071 00 and associated OCIP documents to identify "Team Industrial Services, Inc." as enrolled in the OCIP in Furmanite's stead;

    d. Finding Zurich has breached its insurance contract with Team, entitling Team to damages in excess of $75,000;

    e. Finding Zurich is estopped from denying coverage to Team under the OCIP and is liable to Team for damages in excess of $75,000; and

    f. Awarding Team its reasonable attorneys' fees, costs, and any further relief, at law or equity, to which Team is entitled.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, pursuant to Local Rule 40.2, Team hereby designates Kansas City, Kansas as the place of trial for the instant case.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully Submitted,

**Team Industrial Services, Inc.**

 /s/ K. Christopher Jayaram
Robert M. Pitkin                KS Bar #13868
K. Christopher Jayaram     KS Bar #23123
J. Brett Milbourn              KS Bar #12743
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone: (816) 421-0700
Facsimile: (816) 421-0899
rpitkin@hab-law.com
cjayaram@hab-law.com
bmilbourn@hab-law.com

*Co-Counsel (admitted pro hac vice)*
Jack C. Hsu              IL Bar #6216270
Nathan A. Hall         IL Bar #6308423
Brian H. Boyle, Jr.    IL Bar #6308631
Christensen Hsu Sipes, LLP
135 S. LaSalle Street, Suite 4200
Chicago, IL 60603
Telephone: (312) 634-1014
Facsimile: (312) 634-1018
jack@chs.law
nate@chs.law
brian@chs.law

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

      Further, I certify that the following Defendants will be served a true and correct copy of the First Amended Complaint with Summons personally at the following addresses:

Cecilia Henson
2315 Westridge Ave. West, Apt. Q-11
Tacoma, Washington, 98466

Dorian Henson
825 South Alma School  Road, Apt. 278
Mesa, Arizona 85210

Carol Anno
4047 Oak
Overbrook, KS 66524

                                                               */s/ Robert M. Pitkin*