## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TEAM INDUSTRIAL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-2710-HLT-KGG |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | |
| COMPANY, *et al.*, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM & ORDER ON
## MOTION FOR LEAVE TO AMEND COMPLAINT

NOW BEFORE THE COURT is the "Motion for Leave to File Second Amended Complaint" filed by Plaintiff Team Industrial Services, Inc (hereinafter "Plaintiff"). (Doc. 114.) The motion requests leave to add claims, and to add one party. Only Defendant Westar Energy, Inc. has filed a response opposing the motion. After review of the parties' submissions, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion.

## BACKGROUND

Non-party Furmanite was a contractor which provided services to Westar at a coal-fired power plant. Under its contract with Westar, insurance was provided to Furmanite by Westar under an OCIP through Zurich which provided coverage to all enrolled contractors performing work for Westar during the

policy's effective dates.  Plaintiff alleges that it assumed the contract from Furmanite, but that as a result of "errors, oversights, or inadvertence that [it] contends is attributable to Westar, Zurich, and/or their agents or representatives, [Plaintiff] purportedly was not enrolled in the OCIP."

Two Westar employees were killed in an accident at the site and brought legal actions against Plaintiff.  Zurich denied coverage because Furmanite, rather than Plaintiff, was listed as the insured, even though Plaintiff claims Westar and Zurich knew plaintiff was performing the work at the site.

Plaintiff brought this declaratory judgment action on November 19, 2019, against Westar and Zurich claiming it was entitled to coverage for the accidents. The motion to intervene (Doc. 92) filed by Westchester Fire Insurance Company was granted on 10/20/2020 (Doc. 117).

With the proposed Second Amended Complaint (Doc. 114-1), Plaintiff seeks to "supplement its averments against certain of these Current Defendants or assert additional causes of action against certain Current Defendants, based on facts and circumstances in common with the bases for the claims currently before the Court."  (Doc. 114, at 2.)  The motion also seeks to add another insurer as a defendant.  The averments and claims relating to Defendant Westar are the subject

of this Order as no other parties responded or objected to Plaintiff's requested amendments.[1]

In this regard, Plaintiff alleges that it has a right to defense and potential indemnity as to claims asserted against it in the Texas litigation under the OCIP maintained by Westar.  (Doc. 114, at 3.)  Plaintiff continues that the primary layer of OCIP coverage was provided through a policy of insurance issued by Defendant Zurich while excess OCIP coverage was to be provided by policies respectively issued by Defendant Westchester and Defendant Endurance.  (*Id*.)

Westar argues that Plaintiff should not be allowed to file the proposed Second Amended Complaint

> over a year after this case was filed, without explanation, adding, for the first time, seven affirmative claims for relief against [Westar], when the Rule 15 factors (undue delay, bad faith and dilatory motive, undue prejudice, and most importantly futility) weigh heavily against allowing the amendment.

(Doc. 134, at 24.)

## ANALYSIS

## I.      Standards for Motions to Amend.

---

[1] Plaintiff also proposes to "join and assert claims" against Westchester Fire Insurance Company.  (Id.)  Westchester voluntarily moved to intervene in this litigation, which was granted by the undersigned Magistrate Judge.  (Docs. 92, 117.)  Plaintiff also seeks to join and assert claims against Endurance American Insurance Company.  (Doc. 114, at 2.)

Motions to amend pleadings are governed by Fed.R.Civ.P. 15(a), which provides that a pleading may be amended "once as a matter of course within … 21 days after service of a responsive pleading." Fed.R.Civ.P. 15 (a)(1)(B). Because more than 21 days have elapsed since Defendants filed their Answers, Plaintiff may amend "only with the opposing party's written consent," which has not been provided, "or the court's leave." Fed.R.Civ.P 15(a)(2).

Courts are to "freely give leave when justice so requires." *Id*. "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kan. Dept. Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted). "The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Causer v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *8 (D. Kan. Nov. 17, 2020). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Williamson v. United Parcel Service, Inc.*, 2020 WL 1638063, at *2 (D. Kan. April 2, 2020) (citation omitted).

To withstand dismissal, a complaint or amendment need only make a statement of the claim and provide some factual support. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). "It does not matter how likely or unlikely the party is to actually receive such relief, because for the purposes of dismissal all allegations are considered to be true." *Williamson*, 2020 WL 1638063, at *2 (citing *Twombly*, 550 U.S. at 556). In other words, applying this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party." *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09-2626-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010).

The proposed amendment should be found futile only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law." *Id.* (citing *Raytheon Aircraft Co. v. U.S.*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007).) The party opposing the amendment has the burden of showing the proposed amendment is futile. *Williamson*, 2020 WL 1638063, at *2 (citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011)).

## II.     Rule 15 Factors.

In opposition to Plaintiff's motion, Defendant Westar argues that the factors to be considered under Fed.R.Civ.P. 15 – undue delay, bad faith and dilatory motive, undue prejudice, and futility – weigh "heavily" against allowing Plaintiff's proposed amendments.  (Doc. 134, at 24.)  The Court will address each of these factors in turn.

### A.     Undue Delay.

In determining whether a delay is undue, the Tenth Circuit focuses primarily on the reasons for the delay.  Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay.'" ***Minter v. Prime Equip. Co***., 451 F.2d 1196, 1206 (10th Cir. 2006) (citations omitted)).  An unexplained delay by itself can be adequate justification for the denial of a motion to amend. ***Durham v. Xerox Corp.***, 18 F.3d 836, 840 (10th Cir. 1994).  Also, courts "have denied leave to amend when the moving party knew about the facts on which the proposed amendment was based but omitted the necessary allegations from the original pleading."  Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. §1488 (2d. ed. 1990).

According to Westar, Plaintiff "only sought to bring these claims after losing its OCIP defense in state court, nearly a year into the course of this litigation, and two years after learning of Zurich's coverage denial on the basis that [Plaintiff]

was not enrolled in the OCIP." (Doc. 134, at 26.) More specifically, Westar

alleges that Plaintiff

> has been aware of the underlying accident since early
> June, 2018 (Doc. 114-13); has known of Zurich's denial
> of coverage since October 18, 2018, and has known since
> no later than November 18, 2019 (prior to filing this
> lawsuit) of Westar's position that [Plaintiff] had never
> been selected for inclusion in, or enrolled in, the OCIP,
> nor had Westar ever intended that [Plaintiff] be enrolled.
> Nonetheless, up to now, [Plaintiff] continuously alleged
> its failure to be enrolled in the OCIP as a 'mutual
> mistake,' resulting in Zurich's mistaken failure to include
> [Plaintiff] as a named insured under the Westar OCIP, as
> opposed to the result of some kind of wrongful conduct
> on Westar's part.

(*Id.*, at 25.)

Westar continues that some of Plaintiff's proposed claims against it "are the

same as those it previously alleged against Zurich in the First Amended

Complaint," such as breach of contract and promissory estoppel. (*Id.*, at 25-26.)

Westar contends that "nothing has changed" because Plaintiff has been aware,

since this litigation commenced, of Westar's position that Plaintiff "was never

intended to be enrolled in, and in fact had never enrolled in, the OCIP." (*Id.*, at

26.)

According to Westar, Plaintiff was aware of this at the time it filed the

Complaint in the Illinois litigation, the initial Complaint in this case (Doc. 1), and

the First Amended Complaint (Doc. 64) "without any suggestion of wrongdoing or

liability on [Westar's] part, but merely alleging once again that [Westar] was a party to the litigation because its interests may be affected." (*Id.*)  Westar argues that Plaintiff cannot provide an adequate explanation for the delay.

Plaintiff replies that the delay in filing is not undue because the amendment was sought prior to the expiration of the deadline in the Scheduling Order and that the statute of limitations on these claims had not passed.  (Doc. 141, at 6-7.)  The Court acknowledges that both of these statements are true, albeit not determinative of whether there was undue delay and seeking the amendment.

Plaintiff also argues that the timing of the motion to amend is resulted from its discovery of facts during the course of this litigation upon which the proposed claims against Westar are based.  (*Id.*, at 7.)  Plaintiff contends that it

> developed sufficiently 'detailed' evidence to justify claims against [Westar] only because during this litigation, [Plaintiff] has utilized the discover [sic] period to investigate whether the assertions made by [Westar] align with documentation and events contemporaneous to the events [Westar] purports to characterize – and whether they are consistent with OCIP custom and practice.  That evidence (which includes expert opinions [Plaintiff] will proffer at the appropriate time) has revealed [Westar's] positions are neither credible nor reconcilable with the 'facts' that are the bases for averments in the Second Amended Complaint – which makes it demonstrably inaccurate for [Westar] to simply declare 'nothing has changed … .'  *Cf.* (Doc. 134, Page 26 of 60).

(*Id.*, at 10.)

Simply stated, Plaintiff contends that "[t]he factual averments have evolved as [its] investigation of factual details has evolved." (*Id.*, at 11; *see also id.*, at 13-14, enumerating new factual averments determined through discovery that were "triggered" by Westar's position in this lawsuit.)  The Court finds that Plaintiff has provided adequate justification for the timing of the requested amendment.  The delay has not been undue.  This objection by Westar is **overruled**.

### B.      Undue Prejudice.

In essence, Westar argues that Plaintiff's motion to amend should be denied because Plaintiff's proposed amendments change Westar from merely an interested party in this litigation to an active Defendant.  According to Westar,

> this case was purely a declaratory judgment action with regard to Zurich's purported coverage obligations, as far as any parties besides Plaintiff were aware.  No party sought relief from [Westar] or alleged any counts against it.  Although the First Amended Complaint added various theories against Zurich, it reiterated that [Westar] was made a party to this action because 'its interests may be affected by the outcome of this action,' i.e., [Plaintiff's] claims against Zurich.  (Doc. 1 at ¶ 9 and First Am. Compl. Doc. 64 at ¶ 12.)
>
> Now, [Plaintiff] seeks to interject, for the first time, seven affirmative claims against [Westar].  This outpouring of 11th-hour legal theories does more than simply require [Westar] to adjust its potential strategy in defending this action; it would cause [Westar] to assume a defensive posture in this matter for the very first time, more than a year into the case.

(Doc. 134, at 27-28.)

The Court acknowledges that the proposed amendments change Westar's position in this litigation from an interested party to actively defensive. That stated, this proposed amendment must not be viewed in a vacuum that considers only the impact on Westar. Litigation is, in and of itself, a prejudicial process. Virtually any litigation-related position or action by an opposing or non-aligned party has the potential to be prejudicial to other parties. The issue herein is not whether Westar will be prejudiced, but whether the prejudice incurred by Westar is undue. Given the nature of Plaintiff's claims and the issues in dispute in this lawsuit, the Court finds that the prejudice to Westar is not undue.

Further, the Court does not agree with Westar's characterization that Plaintiff's requested amendment occurred in the "11th hour." (Doc. 134, at 28.) The Scheduling Order in this case (Doc. 91) had been in place less than two months when Plaintiff filed the present motion (Doc. 114). Plaintiff's motion was filed within the deadline to move to amend pleadings contained in that Scheduling Order.[2]

Westar argues that "[c]ourts disfavor amendments that would add entirely new claims and factual issues unrelated to the moving party's initial pleading, requiring the non-moving party to develop entirely new defenses, and conduct

---

[2] In addition, Westar has assented to Plaintiff's request to modify the Scheduling Order. (See Doc. 126, at 8.)

additional discovery." (Doc. 134, at 28.) While this is true in theory, the cases cited by Westar to support this position are entirely inapplicable to the matter before the Court.

In ***Gardiner v. McBryde***, the motion to amend was filed almost seven weeks after the close of discovery. No. 15-3151-DDC-JPO, 2018 WL 6991101 (D. Kan. Oct. 5, 2018). The District Court found that the proposed amendments would have required the Court "to reopen discovery to [allow the defendant to] adduce information from plaintiff about those new allegations and, possibly, prepare new defenses adequately for trial." *Id.*, at *5. This is clearly distinguishable as discovery remains open in the present case.

***Beech Acceptance Corp. v. Air Ky. Airlines, Inc***., is equally dissimilar to the situation before the Court. No. 89-1068-PFK, 1990 WL 37930 (D. Kan. Mar. 16, 1990). In that case, the defendants sought to amend their answer after the plaintiff filed its motion for summary judgment. (*Id*.) The District Court held that "[g]ranting the motion to amend at this stage would raise entirely new defenses, add a new party to the litigation, and require further expensive and time-consuming discovery." (*Id*., at 4.) While the amendments requested herein will undoubtedly change the structure of the claims and defenses in this case and will undoubtedly require further discovery, unlike in ***Beech***, the discovery deadline has not yet passed in this case. (Doc. 91.) In fact, when the motion to amend was filed,

approximately five months remained before the discovery deadline.  Westar's

objection of undue prejudice is, therefore, **overruled**.

### C.    Bad Faith/Dilatory Motive.

In support of a finding of bad faith or dilatory motive, Westar relies on the

following language from Wright & Miller:

> When the court inquires into the good faith of the moving
> party, it typically will take account of the movant's delay
> in seeking the amendment . . . . leave may be withheld if
> the moving party knew the facts on which the claim or
> defense sought to be added were based at the time the
> original pleading was filed and there is no excuse for his
> failure to plead them.

6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1487 (2d ed.

1990).  Westar argues that "there is no adequate explanation for [Plaintiff's] failure

to previously raise the issues in its proposed Second Amended Complaint."  (Doc.

134, at 29.)

As discussed in Section A., *supra*, however, this Court has identified

sufficient explanation for the delay by Plaintiff in requesting the present

amendments.  Westar's bad faith/dilatory motive objection is, thus, **overruled**.

### D.    Futility.

Westar spends the next 30 pages of its responsive brief arguing that the

claims contained in Plaintiff's proposed Second Amended Complaint should not be

allowed on the basis of futility.[3]  The burden is on Westar to establish the futility of Plaintiff's proposed amendment.  *Pekareck v. Sunbeam Products*, No. 06–1026–WEB, 2006 WL 1313382, at *3 (D.Kan. May 12, 2006).

A court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim.  *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *see* 6 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1487 at 642 (1990).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *ConAgra Foods Food Ingredients Co., Inc. v. Archer-Daniels-Midland Co.*, No. 12-2171-EFM-KGS, 2014 WL 359566, at *2 (D. Kan. Feb. 3, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted)).

To be facially plausible, a claim must include sufficient factual matter "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F.

---

[3] The Court notes that Westar's brief is in violation of D. Kan. Rule 7.1(e), which limits the arguments and authorities section of briefs to 30 pages "absent a court order."  Westar did not request or receive an exception to this rule from the Court, but the portion of its brief containing legal argument and citing legal authority is approximately 37 pages long. (*See* Doc. 134, at 23-59.)  In the interests of judicial economy, the Court will not require Westar to submit a compliant brief.  The Court does, however, instruct Westar to be aware of, and compliant with, D. Kan. Rule 7.1 as this case progresses.  Any other noncompliant briefs will be stricken by the Court.

Supp. 2d 1212, 1218 (D. Kan. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).  In determining the facial plausibility of an asserted claim, the Court need consider "conclusory allegations, unwarranted inferences, or legal conclusions."  *Hackford v. Babbitt*, 14 F.3d 1457 (10th Cir. 1994).  As discussed above, however, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."  *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09-2626-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010).

In its response, Westar present pages of additional facts and allegations in support of its futility argument.  This demonstrates a misunderstanding of the issue.  The futility challenge in response to a motion to dismiss is not a claim that ultimately, after considering all the evidence, the Plaintiff may lose the claim at trial or on summary judgment.  Rather, the test is whether the proposed claim would survive a motion to dismiss.

Westar argues that because Plaintiff "fails to plausibly allege a breach of the parties' unambiguous written agreements … , it similarly fails to plausibly show it

is entitled to relief under any of the multitude of other tort claims it now seeks to allege against [Westar]."  (Doc. 134, at 32.)  In this context, the Court will address the various claims contained in the proposed amendment in this context.

### 1.    Breach of contract (proposed Count IV).

Count IV of the proposed Second Amended Complaint asserts that Westar breached its duties under the contract by failing to "ensure continued enrollment" in the OCIP for Plaintiff's benefit.  (Doc. 114-2, at ¶ 108.)  Westar argues that "[t]his claimed contractual obligation … exists nowhere in the unambiguous written agreements, and cannot be implied, conjured, or fabricated from any reasonable reading of the agreements or from [Plaintiff's] allegations."  (Doc. 134, at 32.)  According to Westar, the "Master Services Agreement" between Plaintiff and Westar "unequivocally provided that [Plaintiff] was responsible for its own liability insurance and workers' compensation insurance, and contained no provisions regarding an OCIP."  ( *Id*., at 33.)

Plaintiff responds that the following averments establish that its contractual liability claim is not futile:

> • "Westar re-enrolled Furmanite in the OCIP in 2014, 2015, 2016, 2017, and 2018." (Doc. 114-2, Page 6 of 28, ¶ 25).
> • "No action was required by Furmanite for re-enrollment in 2014, 2015, 2016, 2017, or 2018." (*Id*. at 6 of 28, ¶ 26).

> • "On September 11, 2017, Westar executed Change
> Order No. 02 to the Team Contract, acknowledging that
> Furmanite was acquired by Team and stating: 'This
> change order will consolidate the two services contracts
> that Furmanite (902236) and TEAM (902228) hold with
> Westar Energy and become effective as of September 1,
> 2017.'" (*Id*. at 7 of 28, ¶ 31).
> • "The Consolidated Contract incorporated the scope of
> work and OCIP provisions of the Furmanite Contract."
> (*Id*. at 8 of 28, ¶ 33).
> • "Critically, Change Order No. 02 did not terminate
> OCIP insurance coverage, because Westar's assumption
> of the OCIP obligation in the previous Furmanite
> Change Order No. 01 was 'consolidated' into the
> ongoing contractual relationship between [Plaintiff] and
> Westar." (Id. at 8 of 28, ¶ 35).

(*See* Doc. 114-2, at ¶¶ 25, 26, 31, 33, 35; *see also* Doc. 141, at 20.)

The Court finds that these factual averments, if accepted as true for the

purposes of this motion, establish that the amendments proposed by Plaintiff

relating to a claim for breach of contract are plausible and/or not futile. The

portion of Plaintiff's motion relating to this claim is **GRANTED**.

### 2. Theories based on tort.

#### a. negligence *per se* (proposed Count V).

The elements of a claim for negligence *per se* pursuant to Kansas law are

"(1) a violation of a statute, ordinance, or regulation, and (2) the violation must be

the cause of the damages resulting therefrom." ***Pullen v. West***, 278 Kan. 183,

194, 92 P.3d 584, 593 (2004). Plaintiff "must also establish that an individual right

of action for injury arising out of the violation was intended by the legislature." *Id*.

Plaintiff's proposed claim for negligence *per se* relates to Westar's alleged violation of K.S.A. § 40-5403.  Pursuant to subsection (a)(2) of the statute, the Insurance Commissioner is mandated to require controlled insurance programs to "provide that cancellation of any or all of the coverage provided to a participant prior to completion of work on the applicable project, shall require the owner or contractor who establishes a controlled insurance program to either replace the insurance or pay the subcontractor's cost to do so[.]"

Westar argues that this claim fails as a matter of law.  Westar contends that

> [b]ecause [Plaintiff] was not an OCIP participant, Westar had no duty to replace, or require [Plaintiff] to replace, any insurance coverage.  Additionally, Westar did not cancel OCIP coverage for [Plaintiff] or Furmanite while the work at issue was being performed.  Although Westar did take action to cancel Furmanite's OCIP coverage in 2019, this was well after any work [Plaintiff] or Furmanite performed relevant to this lawsuit, after the relevant accident in spring 2018, and after Furmanite had ceased doing business in Kansas.  Regardless of who was or was not enrolled in the OCIP, Westar did not cancel either [Plaintiff] or Furmanite's OCIP coverage during the pendency of the relevant work.

(Doc. 134, at 45-46.)

Plaintiff replies that it "averred the previously insured valve maintenance work was ongoing and not completed, yet [Westar] did nothing to inform [Plaintiff], 'Furmanite,' or anyone else that that OCIP coverage (according to [Westar]) no longer would be provided for this 'work.'"  (Doc. 141, at 32.)

Plaintiff references the following language from Count V of the proposed Second Amended Complaint:  "The contract for the work . . . was the Furmanite Contract, which had been extended through 2018 and consolidated into the Consolidated Contract … .  Westar neither replaced insurance for such risk as provided by § 40-5403 nor notified [Plaintiff] of the prospect of termination."  (Doc. 114-2, at ¶¶ 114, 116; *see also* Doc. 141, at 20.)  Plaintiff also argues that it is "allowed to simultaneously pursue claims seeking to prove the existence of coverage, as well as this contingent Count premised on the putative absence of coverage, because Rule 8(d)(3) allows [Plaintiff] to 'state as many separate claims … as it has, regardless of consistency … .'"  (Doc. 141, at 3.)

Defendant responds that Plaintiff "fails to plausibly plead that the Kansas Legislature intended K.S.A. 40-5403 to provide a private cause of action."  (Doc. 134, at 46.)  Plaintiff replies that this is immaterial because the Kansas Supreme Court "has rejected that historical misconception and clarified that whether 'statutes give rise to an independent private cause of action is irrelevant …' when a plaintiff 'utilize[s] a statute to establish a duty of care … .'"  (Doc. 141, at 32 (quoting *Shirley v. Imogene Glass*, 308 P.3d 1, 5, 6 (Kan. 2013) (emphasis added)).)

The *Shirley* opinion explains the distinction between basing a cause of action on a duty created by statute and using a statute to define a duty or standard

of care in a common-law tort.  The question is whether the duty which forms the basis of the tort exists independently of the statute, thus allowing the statue to help define the standard of care, or whether the action itself springs from the statute.

Plaintiff's claim in Count V of the proposed second amended complaint is of the latter variety.  There is no independent negligence action available here to which the statutory duty would apply (*see* discussion *infra*), so this Count relies on a claim that the statute itself creates a cause of action.

Whether a statute provides a private cause of action is a question of law resolved by application of a two-part test.  First, "the party must show that the statute was designed to protect a specific group of people rather than to protect the general public." ***M.C. Chumley v. Shawnee Mission United School District NO. 512***, 363 F.Supp.3d 1182, 1210 (D. Kan. 2019) (citation omitted).  Second, the court must "review the legislative history to determine whether a private cause of action was intended." *Id*.

It is apparent that Plaintiff is within the class of persons this statute was to protect.  Westar, which has the burden to establish futility, addresses the legislative intent issue.

> [Plaintiff] also fails to plausibly plead that the Kansas Legislature intended K.S.A. 40-5403 to provide a private cause of action.  The Court must also 'review legislative history to determine whether a private right of action was intended.' … 'The legislative intent to grant or withhold a private cause of action … is determined primarily from

the form or language of the statute.' … 'The nature of
the evils sought to be remedied and the purpose the
statute was intended to accomplish may also be taken
into consideration.' … 'The general recognized rule is
that a statute which does not purport to establish a civil
liability but merely makes provision to secure the safety
or welfare of the public as an entity is not subject to
construction establishing a civil liability.' … Nothing in
the language of the statute or applicable regulations
suggest that the legislature intended a private cause of
action. The legislative history reviewed by [Westar]
describes no private right of action, and the statute itself
provides the Kansas insurance commissioner the duty
and power to enforce the statute's provisions; it does not
suggest that a private right exists to enforce them or
collect damages for any violations.

(Doc. 134, at 46 (citations omitted).)  Plaintiff does not address this issue, and the

Court finds Defendant's reasoning persuasive.

The Court finds that Westar has established the futility of Plaintiff's proposed

claim for negligence *per se*.  This portion of Plaintiff's motion is **DENIED**.

### b.    breach of fiduciary duty (proposed Count VI).

The elements of a claim for breach of fiduciary duty under Kansas law are

duty, breach, causation, and damages.  ***Camick v. Holladay***, No. 17-1110-EFM-

GEB, 2018 WL 1523099, at *9 (D. Kan. Mar. 28, 2018), *aff'd*, 758 F. App'x 640

(10th Cir. 2018).  "[T]ort claims such as breach of fiduciary duty can be pleaded in

parallel with breach-of-contract claims only if the tort is independent of the

bargained-for duties in the contract." ***Swimwear Sol., Inc. v. Orlando Bathing***

***Suit, LLC***, 309 F. Supp. 3d 1022, 1032 (D. Kan. 2018).

In regard to this proposed claim, Westar argues that Plaintiff "has not 'identified a fiduciary duty independent of the contract' such that this claim should be allowed to proceed." (Doc. 134, at 47.) Westar continues, correctly, that "Kansas law makes clear that a contractual relationship, on its own, is insufficient to create a fiduciary duty." (*Id*., citing **Swimwear Sol.**, 309 F. Supp. 3d 1033.) The Court therefore must review the allegations contained in Plaintiff's proposed Second Amended Complaint to determine if Plaintiff has alleged a duty that is independent of, and that goes beyond, those duties contained in and created by the parties' written agreement(s).

Plaintiff's proposed pleading alleges that "[a]s part of its 2013 enrollment application for the Westar OCIP, Furmanite agreed to rely on Westar to procure insurance and to keep that insurance in effect by paying premiums." (Doc. 114-2, at ¶ 119.) The proposed pleading continues that "Westar's control over procuring insurance for the OCIP and keeping it in effect extended to 'Program policy(ies) as now written or as subsequently modified, rewritten or replaced'" and that "Westar contemplated that contractors, including Furmanite, would rely on Westar to procure insurance that would be available to those contractors should a claim arise from work those contractors performed at Westar's facilities." (*Id*., at ¶¶ 120, 121.) According to Plaintiff, "[t]his relationship of reliance to provide and maintain insurance, first gave rise to a fiduciary duty between Westar and

Furmanite" and "[f]ollowing [Plaintiff's] acquisition of Furmanite by merger and the consolidation of the Furmanite Contract with [Plaintiff's] Contract, Westar's fiduciary duty to Furmanite survived the acquisition and contractual consolidation, and became a fiduciary duty owed to Team." (*Id*., at ¶¶ 122, 123.)

Within this context, Plaintiff alleges that Westar breached its fiduciary duty to Plaintiff by failing to enroll Plaintiff in the 2018 OCIP, despite Westar's awareness of Plaintiff's acquisition of Furmanite. (*Id*., at ¶ 124.) Plaintiff further alleges that the fiduciary duty was breached when Westar failed to inform Plaintiff or Furmanite "that Furmanite remained enrolled in the OCIP under its own name," when Westar failed to inform Plaintiff or Furmanite that Plaintiff "was not a named enrollee under the 2018 OCIP," and when Westar failed to notify Plaintiff of "any action that was required for [Plaintiff] to be enrolled instead of Furmanite in the 2018 OCIP." (*Id*.) Westar argues that "[t]hese assertions … amount to unsupported legal conclusions which are flatly contradicted by the express written agreements at issue, and which may therefore be disregarded." (*Id*., at 48.)

The Court finds that Westar has not established the futility of this claim for purposes of the present motion to amend. The allegations contained in Plaintiff's proposed Second Amended Complaint have created a sufficient question as to whether Westar had (and breached) a fiduciary duty beyond those duties explicitly

created by the contract itself.  The Court thus **GRANTS** Plaintiff's motion as to this cause of action.

### c.        negligence (proposed Count VII).

To recover for negligence under Kansas law, Plaintiff must establish that a duty exists, the duty has been breached, the existence of an injury, and a causal connection between the breached duty and the injury.  *Thomas v. Bd. of Shawnee Cnty. Comm'rs*, 262 P.3d 336, 346 (Kan. 2011).  The existence of a duty is a question of law while the determination of whether that duty has been breached is a fact question.  *Id*. (citation omitted).  As to this proposed claim, Westar contends that

> any 'duty' Westar may have in regard to [Plaintiff] and the OCIP is governed by the written contracts.  Thus, there is no independent legal duty outside of the contracts.  Westar did not breach any duty under the contract, but even if it had, [Plaintiff's] actionable claim would be for breach of contract, not negligence.

(Doc. 134, at 49.)

Plaintiff replies that the duty element of its proposed claims is "inherently fact and case specific."  (Doc. 141, at 33 (citations omitted).)  Plaintiff contends it "will propound evidence, including expert testimony on precisely that issue in the appropriate procedural context.  *Cf.*  (Exhibit 1)."

Plaintiff has, however, failed to address how the negligence claim is independent from the contractual duties that form the basis of the breach of

contract claim.  Simply stated, because Plaintiff's proposed negligence claim, as contained in the proposed Amended Complaint, is based on a duty derived from the underlying contract, Plaintiff's recourse lies with a breach of contract claim, not a claim for negligence.  (*See* Doc. 114-2, at ¶¶127, 128.)  The Court thus finds that Westar has established the futility of Plaintiff's proposed claim for negligence. This portion of Plaintiff's motion is **DENIED**.

### d.   tortious interference with contract (proposed Count VIII).

"Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby."  ***Dickens v. Snodgrass, Dunlap & Co.***, 255 Kan. 164, 872 P.2d 252, 257 (1994) (citing ***Turner v. Halliburton Co.***, 240 Kan. 1, 722 P.2d 1106 (1986)).  The elements of a claim for tortious interference with contract under Kansas law are "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.  ***Swimwear Sol.***, 309 F. Supp. 3d at 1039.

Westar argues that Plaintiff's proposed amendment fails to establish any of these elements.  (Doc. 134, at 51-52.)  Westar contends that the relevant contract identified in the proposed amend pleading is the 2018 OCIP contract issued by Zurich.  (*Id.* (citing (Doc. 114-2, at 22, ¶ 131).)  According to Westar,

> [Plaintiff] alleges that Westar knew that [Plaintiff] believed it was enrolled in the 2018 OCIP, that 'Westar knew that the valve maintenance work called for in the Furmanite Contract as consolidated into the Consolidated Contract historically had been covered by the OCIP,' and that if [Plaintiff] were attributed liability in the Texas litigation that Zurich would owe a duty to defend [Plaintiff] and Westar would have to pay its deductible. (*Id*. at ¶¶ 133–134.)  [Plaintiff] claims that Westar "took unjustified steps to undermine [Plaintiff's] rights to coverage under the OCIP" by, for example, after this case was filed asking Aon to retroactively cancel any coverage for Furmanite, knowing that [Plaintiff] should have been covered under that policy. (Id. at ¶ 135.)

(Doc. 134, at 51-52.)

Westar contends that this entire lawsuit "is premised on [Plaintiff] trying desperately to get this Court to find a contract where none exists."  (*Id*., at 52.)  As such, Westar argues that there can be no tortious interference with a contract that does not exist.  (*Id*.)  Westar posits that even if the existence of a contract is proven, Plaintiff cannot establish the remaining elements of this claim – that Westar had knowledge of any contract between Plaintiff and Zurich, that Westar was aware [Plaintiff] made a claim under the insurance contract, that Westar had any involvement in Zurich's denial of such claim, or than any request by Westar to remove Furmanite from coverage would be unjustified.  (*Id*., at 52-53.)

Plaintiff replies that Westar's arguments are based on mischaracterizations of the allegations in the proposed amended pleading.  Further, Plaintiff argues that Westar's position is based on "inappropriate presumptions and inferences that the

factfinder will adopt [Westar's] view of the record." The Court agrees with Plaintiff. Although Westar argues that there is no contract, Plaintiff has specifically alleged the existence of a contract. The allegations in the proposed amendment that Westar took actions after the accident claims to encourage Zurich to deny coverage to Plaintiff state an action for interference in the absence of justification, which cannot be determined from the proposed pleading. Therefore, Plaintiff has set forth allegations supporting the elements of this cause of action.

With the Court mandated to accept as true all well-pleaded factual allegations and view them in the light most favorable to Plaintiff, Westar cannot establish that Plaintiff's proposed claim for tortious interference with contract is futile. This portion of Plaintiff's motion is, thus, **GRANTED**.

### e.   quasi-estoppel and promissory estoppel (proposed Counts IX and X).

Pursuant to Kansas law, "'quasi-estoppel applies where party has previously taken position which is so inconsistent with position now taken as to render present claim unconscionable.'" *In re Gateway Ethanol, LLC*, 415 B.R. 486, 497 (D. Kan. 2009) (citation omitted). The party claiming equitable estoppel must establish "another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed." *Steckline Commc'ns v. Journal Broad. Grp. of Kan., Inc.*,

305 Kan. 761, 770 (2017).  The burden of proof is on the party claiming estoppel. *Gateway Ethanol*, 415 B.R. at 497.

Westar contends that Plaintiff has failed to allege "inconsistent positions taken by Westar, let alone one that shocks the conscience."  (Doc. 134, at 54.) Westar continues that "[t]here is no plausible allegation that Westar ever, through its words, actions or abdication of a binding duty to speak, induced [Plaintiff] to reasonably believe it was covered by the OCIP – or that [Westar] is now changing such a position."  (*Id*.)

The requirements for invoking promissory estoppel are:  "a) defendant made a promise, b) the promise was made under circumstances where the promisor intended and reasonably expected the promise would be relied upon by the promisee, c) the promisee acted reasonably in reliance on the promise, and d) a refusal to enforce the promise would result in an injustice."  *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 (10th Cir. 1990) (citation omitted).  Westar contends, in part, that Plaintiff has failed to "articulate what promise or statement was made by Westar to support its promissory estoppel claim" or to allege that "it would not have done the work had [it] not been in the OCIP."  (Doc. 134, at 57, 58.)

Plaintiff argues that Westar's arguments are based on "premature and erroneous" presumptions as to what the evidence in this case will show.  (Doc.

141, at 34.)  The Court notes that Plaintiff's proposed Second Amended Complaint does articulate the relevant promise – that insurance would be provided for Plaintiff's work under the 2018 OCIP.  (*See* Doc. 114-2, at 26.)  Further, the proposed amended pleading also contains an allegation that Plaintiff relied on this promise in performing the work in question.  (*Id.*)

To be clear, neither promissory estoppel nor quasi-estoppel are stand-alone causes of action.  They are equitable principals applied within, in this case, the contract claims to replace elements or meet the defenses asserted in those claims.  However, the Court sees no harm in these affirmative theories being plead in this fashion.  As such, Westar has not established the futility of the proposed claims.  This portion of Plaintiff's motion is **GRANTED**.

## CONCLUSION

In the context of this Motion to Amend, the Court finds that Westar has established the futility of Plaintiff's proposed claims for negligence *per se* (Count V) and negligence (Count VII).  As such, the portions of Plaintiff's motion relating to those proposed claims are **DENIED**.  Westar has not, however, established that Plaintiff's additional proposed claims are futile.  Further, Westar's other objections have been overruled.  As such, the remainder of Plaintiff's motion is **GRANTED**.

IT IS THEREFORE ORDERED that Plaintiff's Motion (Doc. 114) is **GRANTED in part** and **DENIED in part** as more fully set forth above.  Plaintiff

shall revise its Second Amended Complaint accordingly and file it **within 14 days of the date of this Order**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 10th day of February, 2021.

s/ Kenneth G. Gale
KENNETH G. GALE
United States Magistrate Judge