## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

TEAM INDUSTRIAL SERVICES, INC.,

     Plaintiff,

     vs.

ZURICH AMERICAN INSURANCE
COMPANY; KELLI MOST, individually and
as personal representative of the ESTATE OF
JESSE HENSON; TRACY DUNNAWAY;
CAROL ANNO; BAILEY BURCHETT,
individually and as administrator of the
ESTATE OF DAMIEN "CRAIG"
BURCHETT; DALTON BURCHETT;
WESTAR ENERGY, INC., n/k/a EVERGY
KANSAS CENTRAL, INC.;
WESTCHESTER FIRE INSURANCE
COMPANY; and ENDURANCE
AMERICAN INSURANCE COMPANY.

     Defendants.

Case No. 2:19-cv-02710

## SECOND AMENDED COMPLAINT

Team Industrial Services, Inc., through its attorneys, states as follows for its Second Amended Complaint:

### PARTIES, VENUE, AND JURISDICTION

1.     Plaintiff Team Industrial Services, Inc. ("Team") is incorporated in Texas with its principal place of business in Texas and is a citizen of Texas.

2.     Defendant Zurich American Insurance Company ("Zurich") is incorporated in New York with its principal place of business in Cook County, Illinois, and is a citizen of Illinois and New York. Upon information and belief, Zurich regularly conducts business in Kansas, including issuing insurance policies covering risks located in Kansas. Zurich specifically issued an insurance policy at issue in this litigation for work performed and injuries allegedly sustained in Kansas.

3.      Defendant Kelli Most ("Most"), individually and as personal representative of the Estate of Jesse Henson (the "Henson Estate"), is a plaintiff in Case 18-DCV-256883 pending in Texas District Court for Fort Bend County, Texas (the "Texas Tort Case"), in which Team is a defendant.  Most and the Henson Estate are citizens of Kansas.

4.      Defendant Tracy Dunnaway ("Dunnaway") is an alleged wife of decedent Damien "Craig" Burchett, an intervenor-plaintiff in the Texas Tort Case, and a citizen of Kansas.

5.      Defendant Carol Anno ("Anno") is the surviving parent of Damien "Craig" Burchett, intervened in the Texas Tort Case, and claims an interest in the claims asserted therein, and is a citizen of Kansas.

6.      Defendant Bailey Burchett ("Ms. Burchett"), individually and as administrator of the Estate of Damien "Craig" Burchett (the "Burchett Estate"), is the daughter of Damien "Craig" Burchett, and an intervenor-plaintiff in the Texas Tort Case.  Ms. Burchett and the Burchett Estate are citizens of Kansas.

7.      Defendant Dalton Burchett ("Mr. Burchett") is the son of Damien "Craig" Burchett and an intervenor-plaintiff in the Texas Tort Case.  Mr. Burchett is a citizen of Kansas.

8.      Defendant Westar Energy, Inc., n/k/a Evergy Kansas Central, Inc. ("Westar"), is a corporation incorporated in Kansas with its principal place of business in Topeka, Kansas, and is a citizen of Kansas.

9.      Defendant Westchester Fire Insurance Company ("Westchester") is not a citizen of Texas.  Upon information and belief, Westchester is incorporated in Pennsylvania with its principal place of business in Pennsylvania, and is a citizen of Pennsylvania.  Upon information and belief, Westchester regularly conducts business in Kansas, including issuing insurance policies covering

risks located in Kansas. Westchester specifically issued an insurance policy at issue in this litigation for work performed and injuries allegedly sustained in Kansas.

10. Defendant Endurance American Insurance Company ("Endurance") is not a citizen of Texas. Upon information and belief, Endurance is incorporated in Delaware with its principal place of business in New York, and is a citizen of Delaware and New York. Upon information and belief, Endurance regularly conducts business in Kansas, including issuing insurance policies covering risks located in Kansas. Endurance specifically issued an insurance policy at issue in this litigation for work performed and injuries allegedly sustained in Kansas.

11. The parties identified in paragraphs 3-7 of this complaint are necessary or interested parties to this action because they may have an interest in the outcome of this litigation, as they are parties in the Texas Tort Case against Team, and the insurance policies at issue in this case obligate Zurich, and potentially Westchester and Endurance, to pay any judgment or settlement against Team in the Texas Tort Case.

12. There is complete diversity of citizenship between the plaintiff and all defendants because Team does not have citizenship in common with any defendant.

13. The amount in controversy exceeds $75,000, exclusive of interest and costs.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

15. Venue in the District of Kansas is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Team's claims occurred herein, and the defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS
### Furmanite Work at Westar's Jeffrey Energy Center

16. In 2010, Westar entered into a contract with Furmanite America, Inc. ("Furmanite"), contract No. 902236 (the "Furmanite Contract"), dated August 10, 2010, for the

performance of certain valve maintenance work at Westar facilities, including the Jeffrey Energy

Center in St. Mary's, Kansas.  A true and accurate copy of the Furmanite Contract is attached as

Exhibit A to this complaint.

17.     The Furmanite Contract identified Furmanite's scope of work, stating Furmanite

was contracted to:

> [P]erform technical assistance or to perform, but not be limited to, the general types of work listed below to work at Company's Jeffrey Energy Center, Tecumseh Energy Center, Lawrence Energy Center, Hutchinson Energy Center, Gordon Evans Energy Center, Murray Gill Energy Center, Neosho Energy Center, and other Westar facilities as requested.
>
> Contractor shall provide qualified field service personnel qualified to perform, but not limited to, the following services:
>
> • Onsite leak repair
>
> • Hot tapping
>
> • Cryo-stopping
>
> • Engineering services
>
> • Trevitest (Online valve testing)
>
> • PSIM (Pressurized system integrity management)
>
> • Onsite field machining
>
> • Line stopping
>
> • Valve repair
>
> • Bolting services
>
> • Tank roof repair
>
> • Heat treatment services
>
> • Miscellaneous concrete and composite restoration and repair

Exhibit A, Attachment 1.

4

18.     On November 4, 2013, Westar executed a change order to the Furmanite Contract, which was numbered "CHANGE ORDER NO. 01."  A true and accurate copy of Change Order No. 01 is attached as Exhibit B to this complaint.

19.     Change Order No. 01 extended the effective date of the Furmanite Contract to December 31, 2018.

20.     Change Order No. 01 also modified the language of the Furmanite Contract to include a provision relating to an Owner Controlled Insurance Program.

21.     An Owner Controlled Insurance Program (abbreviated as "OCIP" throughout this complaint) is a program in which a premises or project owner enrolls entities, such as contractors and subcontractors, in a common insurance policy.

**Westar OCIP**

22.     Under the Furmanite Contract, as amended by Change Order No. 01, Westar had the option to implement and maintain an OCIP, and upon so doing, Westar was contractually obligated to maintain and continue the OCIP coverage.

23.     Westar elected to arrange, sponsor, and control an OCIP for enrolled maintenance contractors who performed work at Westar properties, including the Jeffrey Energy Center.

24.     Westar enrolled Furmanite in the OCIP in 2013.  Furmanite's OCIP enrollment application dated July 31, 2013 is attached as Exhibit C.

25.     Westar re-enrolled Furmanite in the OCIP in 2014, 2015, 2016, 2017, and 2018.

26.     No action was required by Furmanite for re-enrollment in 2014, 2015, 2016, 2017, or 2018.

**Team Contract, Acquisition of Furmanite, and Consolidation of Contracts**

27.     Westar entered into a contract with Team on September 1, 2010, contract no. 902228 (the "Team Contract").  A true and accurate copy of the Team Contract is attached as Exhibit D.  The Team Contract identified Team's scope of work, stating Team was contracted to:

> [P]rovide preheat and stress relieving services at the Company's Jeffrey Energy Center, Lawrence Energy Center, Tecumseh Energy Center, Hutchinson Energy Center, Gordon Evans Energy Center, Murray Gill Energy Center, and Neosho Energy Center and other locations as requested.

Exhibit D, Attachment 1.

28.     On or about February 29, 2016, approximately five-and-a-half years after Westar entered into the Furmanite Contract, then Team Contract, Furmanite became a wholly-owned subsidiary of Team as the result of a merger.

29.     After Team's corporate affiliation with Furmanite by merger, Team filed an ERM-14 change of ownership form with the National Council on Compensation Insurance ("NCCI"). A true and accurate copy of that ERM-14 form is attached as Exhibit E.

30.     NCCI ruled that the Team and Furmanite insurance ratings were combinable and notified Zurich and other insurers of its decision.  A true and accurate copy of the notice sent to Zurich is attached as Exhibit F.

31.     On September 11, 2017, Westar executed Change Order No. 02 to the Team Contract, acknowledging that Furmanite was acquired by Team and stating:  "This change order will *consolidate* the two services contracts that Furmanite (902236) and TEAM (902228) hold with Westar Energy and become **effective as of September 1, 2017**."  (italic emphasis added). Change Order No. 02 is attached as Exhibit G.

32.     As stated, Change Order No. 02 consolidated the Furmanite Contract with the Team Contract into one contract, using the Team contract number 902228 (the "Consolidated Contract").

33.     The Consolidated Contract incorporated the scope of work and OCIP provisions of the Furmanite Contract.

34.     Effective September 1, 2017, and in accordance with Change No. 02, the valve maintenance work for Westar that had been performed under the name "Furmanite" was continued under the name "Team-Furmanite," then "Team," as contemplated in the Consolidated Contract.

35.     Critically, Change Order No. 02 did *not* terminate OCIP insurance coverage, because Westar's assumption of the OCIP obligation in the previous Furmanite Change Order No. 01 was "consolidated" into the ongoing contractual relationship between Team and Westar.

36.     Westar did not otherwise provide notice that the valve maintenance work insured by the OCIP would no longer be insured under the OCIP or that Team was obliged to independently enroll in the OCIP after the entry of Change Order No. 02 to continue coverage under the OCIP for the valve maintenance work under the Consolidated Contract.

37.     Upon information and belief, Westar intended that the subject valve maintenance work would continue to be insured by the OCIP and intended for Team to succeed to the benefits of the successive enrollments of Furmanite in the OCIP with respect to the work uniformly required under the Furmanite Contract and Consolidated Contract.

38.     At all relevant times, Westar's conduct related to the Consolidated Contract and ongoing valve maintenance work required by that Contract led Team to believe the valve maintenance work required under the Furmanite Contract and the Consolidated Contract was insured under the OCIP.

**The 2018 OCIP Policy**

39.    After the contract consolidation, in order to purchase OCIP coverage for the 2018 year, Westar, directly or through its agents, submitted to Zurich estimated payroll for anticipated valve maintenance work at the Westar Jeffrey Energy Center.

40.    This practice was a condition for Westar to obtain OCIP coverage through Zurich; accordingly, several provisions in Westar's OCIP documents obligated covered contactors to maintain and provide the payroll information to Westar and Zurich.

41.    In calculating the premium for the 2018 OCIP policy, Zurich used this estimated payroll for this anticipated maintenance work at the Westar Jeffrey Energy Center in 2018.

42.    Zurich required this payroll information to be categorized only by type of work, not by the particular contractor who was to perform the work.

43.    The estimated payroll provided by Westar and used by Zurich to calculate the 2018 premium included valve maintenance work that Furmanite performed in 2017 and that Team contracted to perform and did perform for Westar in 2018, after Team's acquisition of Furmanite and consummation of the Consolidated Contract.

44.    Team indeed continued the practice of submitting payroll information in 2018, after consummation of the Consolidated Contract.

45.    Its willingness and obligation to provide the payroll information was premised solely on the OCIP documentation, and the historical practice of submitting payroll information as a condition of OCIP coverage.

46.    Westar or its agent received Team's payroll information in 2018 and accepted that payroll information in accordance with the OCIP documentation.

47.     Neither Westar nor any agent of Westar responded to Team's submission of the payroll data by questioning why Team was providing the information, by advising the OCIP coverage purportedly had been cancelled before Team assumed responsibility for valve maintenance work at Westar's facility, or by advising the information was not necessary because Team purportedly was not covered by the OCIP.

48.     Zurich charged, and upon information and belief Westar paid, the premium for the 2018 OCIP policy based on estimated payroll for valve maintenance work ultimately performed under the Furmanite Contract as consolidated into the Consolidated Contract.

49.     Upon information and belief, Zurich accepted and retained payment of the 2018 OCIP policy premium based on this estimated payroll for the anticipated valve maintenance work.

50.     Zurich issued OCIP policy GLO 0220071 00, effective January 1, 2018 through January 1, 2019, covering all enrolled contractors performing work for Westar during the policy's effective dates.  Upon information and belief, Exhibit H to this complaint is a true and accurate copy of the Zurich OCIP policy.

51.     Westchester issued policy G24353461003, effective January 1, 2018 through January 1, 2019, which was excess and followed form to the Zurich OCIP policy.   Upon information and belief, Exhibit I to this complaint is a true and accurate copy of the Westchester policy.

52.     Endurance issued policy EXC30000552200, effective January 1, 2018 through January 1, 2019, which was excess to the Zurich and Westchester policies and followed form to the policies.  Upon information and belief, Exhibit J to this complaint is a true and accurate copy of the Endurance policy.

53.     As successor-in-interest to the Furmanite Contract and a party to the Consolidated Contract, Team performed valve maintenance work for Westar at the Jeffrey Energy Center in 2018 that was included in the scope of work from the Furmanite Contract as consolidated into the Consolidated Contract.

54.     Team did so with the understanding and reasonable belief Team's performance of this work was insured under the 2018 renewal of the OCIP and in reliance on the existence of such coverage.

55.     That conclusion was warranted based on, *inter alia*, the express terms of the Consolidated Contract; Furminate's, Team's, and Westar's previous custom and practices with respect to OCIP coverage; and the lack of contrary notice or inquiry from Westar disavowing the coverage.

56.     In particular, neither Westar nor its agents informed Team that it needed to do anything more to be enrolled in the OCIP in 2018 with respect to the valve maintenance work called for under the Furmanite Contract as consolidated into the Consolidated Contract.

57.     Team's liability, if any, arising out of such valve maintenance work was insured under the 2018 OCIP policy because, among other reasons, the original obligor to perform such work had been enrolled in the OCIP for 2018, and Team had accurately reported the payroll information it was requested to provide for that purpose.

58.     Further, coverage for that work could not be terminated under the incorporated terms of the Consolidated Contract, or section 40-5403 of the Kansas Statutes regulating Owner Controlled Insurance Programs, unless the sponsor of such a program (here, Westar) replaced or offered to replace such insurance.

59.     Neither Westar nor its agents offered to do either with respect to the work required under the Furmanite Contract as consolidated into the Consolidated Contract, or for the benefit of Team.

60.     Team therefore justifiability relied upon:  (a) the effect of Change Order No. 02 to consolidate the Furmanite Contract and the Team Contract, to continue the OCIP coverage for the benefit of Team; (b) Westar to take all necessary steps to perform any additional reporting or enrollment to obtain liability insurance for the valve maintenance work performed under the Furmanite Contract and continued under the Consolidated Contract; and (c)Westar to advise if Team needed to undertake additional actions or provide additional information to procure such insurance if such insurance had not already been procured.

61.     As evidence of Westar's intent to continue to insure under the 2018 OCIP liability for such valve maintenance work, Westar, directly or through its agents, re-enrolled "Furmanite" in the OCIP for 2018.  But at that time, the "Furmanite" historical obligations under the Furmanite Contract were being performed by Team pursuant to the Consolidated Contract.

**The 2018 Accident**

62.     In or about April 2018, Team performed work for Westar at the Jeffrey Energy Center under the Furmanite Contract as consolidated into the Consolidated Contract.

63.     On or about June 3, 2018, a fatal accident occurred at the Jeffrey Energy Center.

64.     As a result, Team has been named a defendant in the Texas Tort Case, which alleges that Team was negligent in performing the work called for under the Furmanite Contract as consolidated into the Consolidated Contract.

**Denial of Coverage**

65.    On August 3, 2018, having been named as a defendant in two wrongful death liability lawsuits stemming from the June 3, 2018 accident,[1] Team tendered its defense in the Texas Tort Case to Zurich based on the liability insurance that was or should have been provided under the OCIP.  Exhibit K to this complaint is a true and correct copy of the letter.

66.    On October 18, 2018, Zurich denied Team's tender on the grounds that Team was not enrolled in the OCIP.  A true and correct copy of Zurich's denial is attached as Exhibit L.

67.    Further correspondence between Zurich and Team revealed that the name "Furmanite," not "Team," was used by Westar in the  enrollment materials for the 2018 OCIP. See attached Exhibit M (November 30, 2018 correspondence) and Exhibit N (June 5, 2019 correspondence).

68.    Zurich has rationalized this misnomer excuses its coverage obligations and has refused to defend Team in the Texas Tort Case, although it is common practice within the industry to correct scriveners errors whereby entities within a corporate family are interchangeably referenced in insurance policies.

69.    On April 20, 2020, Westchester followed Zurich's lead and issued its own denial letter to Team on the basis that Team was not enrolled in the 2018 OCIP.  A true and correct copy of Westchester's letter is attached as Exhibit O.

**Intent and Knowledge of Westar**

70.    The designation of "Furmanite" rather than Team as the enrolled contractor in the 2018 OCIP was a scrivener's error that did not reflect the agreement of the parties.

---

[1] All claims have been joined together in the Texas Tort Case.

71.     As demonstrated by its past course of conduct, Westar intended for the work called for under the Furmanite Contract as consolidated into the Consolidated Contract to be insured under the OCIP.  Further, Westar extended the 2010 Furmanite Contract through the end of 2018; recognized that Team had acquired Furmanite by merger in 2016; required that the valve work called for under the Furmanite Contract would be performed by Team; consolidated the Furmanite Contract into the Consolidated Contract; and used the name "Furmanite" in enrollment materials for the OCIP for 2018, to continue OCIP coverage for the valve maintenance work called for under the Furmanite Contract as consolidated into the Consolidated Contract.

72.     All such actions conclusively indicate Westar intended and expected Team to be insured under the OCIP for the valve maintenance work called for by the Furmanite Contract as consolidated into the Consolidated Contract.

73.     The liability alleged in the Texas Tort Case has been averred to arise out of that valve maintenance work.

**Mutual Intent of the Parties Not Reflected in the Documentation**

74.     Team also understood that effective September 1, 2017, it would be the entity ultimately responsible for performing valve maintenance work for Westar under the Furmanite Contract as consolidated into the Consolidated Contract.  Both Westar and Team intended and expected that such work would continue to be insured in the OCIP, under the 2018 renewal of the OCIP.

75.     Westar's use of the name "Furmanite" as the enrolled contractor for the 2018 OCIP reflects that Westar intended for such work to be insured under the OCIP, and Team's status as successor to Furmanite's work renders Team enrolled as a result of the misnomer reference to its wholly-owned subsidiary, Furmanite.

13

76.    Westar's naming Furmanite instead of Team as the enrolled contractor in the 2018 OCIP was the result of Westar losing track of the identity of the entity ultimately responsible for the subject valve work.

77.    Zurich likewise intended to insure the entity performing the valve maintenance work called for in the Furmanite Contract as consolidated into the Consolidated Contract, as demonstrated by Zurich's acceptance and use of Furmanite's 2017 payroll to calculate the 2018 premium for the anticipated valve work actually performed by Team; Zurich's charging and acceptance of the premium based on that payroll; and Zurich's designation of "Furmanite" as insured under the 2018 OCIP as the party it understood to be performing the work that in fact was performed by Team.

**Alternatively, the Parties' Were Mutually Mistaken**

78.    Zurich and Westar intended to enroll in the OCIP, contractors who performed work for Westar for which Westar submitted payroll details to Zurich for the calculation of the 2018 OCIP premium.

79.    Zurich and Westar intended OCIP coverage to be provided in exchange for the premium paid by Westar and accepted by Zurich.

80.    If the enrollment reference to "Furmanite" as a wholly-owned subsidiary of Team was not itself effective to insure Team's liability for work performed pursuant to the Furmanite Contract as consolidated into the Consolidated Contract, then the conduct of the parties reflected they intended for Team to be protected under the 2018 renewal for that work.

81.    Accordingly, if Team was not enrolled in the 2018 OCIP despite the misnomer of Furmanite rather than Team as the contractor, that misnomer was the result of a mutual mistake by Westar, Zurich, and Team.

14

82.     Based on the allegations above, Team is insured under the 2018 OCIP policy for the work out of which its alleged liability arises in the Texas Tort Case.

83.     Based on the allegations above, the 2018 OCIP policy and supporting documents must be reformed to reflect Team and not "Furmanite" as an enrolled contractor.

84.     Failure to reform the 2018 OCIP policy indeed would result in a violation of the terms of the OCIP coverage and Kansas Statutes, including but not limited to Kansas Statute section 40-5403, which prohibit unilateral termination of coverage for work performed pursuant to an OCIP.

## COUNT I

### 28 U.S.C. § 2201
### DECLARATORY JUDGMENT
### (All Parties)

85.     Team incorporates and realleges the preceding paragraphs as though fully set out here.

86.     28 U.S.C. § 2201 permits courts to declare the rights and other legal relations of any interested party seeking such declaration in cases of actual controversy within its jurisdiction.

87.     28 U.S.C. § 2202 and this Court's inherent powers of equity permit this Court to award further necessary relief based on a declaratory judgment or decree.

88.     An actual case and controversy exists between:  (a) Team, as a defendant in the Texas Tort Case based on the valve work Team performed on Westar's behalf in 2018; (b) Zurich, Westchester, and Endurance, as insurers potentially liable to defend Team and/or indemnify for damages alleged against Team in the Texas Tort case; and (c) the other defendants, as parties in interest concerning whether Team was, or should have been, or was entitled to be enrolled under the 2018 OCIP.  Team therefore is entitled to a declaration of its rights to:  (a) a defense from

Zurich in the pending Texas Tort Case pursuant to the Westar OCIP for the operations pursuant to the Furmanite Contract as consolidated into the Consolidated Contract, and (b) as to its status as an insured under the additional layers of coverage that Westchester and Endurance contracted to provide.

## COUNT II
## CONTRACT REFORMATION
### (Against Zurich)

89.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

90.    There was an antecedent agreement between Team and Zurich that the 2018 OCIP policy would provide coverage for Team's work at Westar's Jeffrey Energy Center because estimated payroll for Team's anticipated work in 2018 was used to calculate the OCIP premium, which premium was charged, collected, and retained by Zurich.

91.    In memorializing the agreement for Zurich to provide OCIP coverage for the valve work Team would perform for Westar in 2018, the name "Furmanite" was erroneously used in the enrollment materials for the 2018 OCIP, instead of Team.

92.    The reference to Furmanite in the 2018 OCIP therefore was a mutual mistake regarding the identification of the intended enrollee.

93.    All of the parties to the OCIP intended Team's work, for which estimated payroll was used to calculate the premium, to be covered under the OCIP.

94.    Alternatively, Team intended as much, and it would be inequitable for the other contracting parties (Westar and Zurich) to disregard the course of dealing that made Team's intent clear.

95.    The 2018 Zurich OCIP documents should be reformed to reflect Team and not Furmanite as the enrolled entity in the 2018 OCIP.

## COUNT III

**BREACH OF CONTRACT**
**(Against Zurich)**

96.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

97.    A valid and enforceable insurance contract exists between Zurich as the insurer and Team as the insured, covering Team's work at the Jeffrey Energy Center in 2018, for which Zurich received and accepted adequate consideration in the form of the premium based on Team's work for Westar.

98.    Team has fully performed all of its obligations under the insurance contract including, but not limited to, the actual valve work and submitting ongoing payroll information as mandated in the OCIP documents.

99.    Zurich has failed and refused to defend Team in the Texas Tort Case, in breach of the insurance contract.

100.    As a result of Zurich's breach, Team has been damaged in an amount to be determined at trial in excess of $75,000, including but not limited to the costs Team has incurred to defend the Texas Tort Case and any liability imposed on Team in the Texas Tort Case.

## COUNT IV

**BREACH OF CONTRACT**
**(Against Westar)**

101.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

102.    The Consolidated Contract is a valid and enforceable contract between Team and Westar.

103.    The Consolidated Contract included the OCIP provision that originated in the Furmanite Contract, and is therefore subject to contractual restraints and applicable Kansas statutes governing OCIPs, including Kansas Statute section 40-5403.

104.    The subject OCIP provision gave Westar the option to implement and maintain an OCIP policy to cover the subject valve maintenance work ultimately performed by Team in April 2018.

105.    Westar implemented and maintained an OCIP that covered relevant valve maintenance work from 2013 through and including 2018.

106.    Team performed valve maintenance work for Westar in April 2018 pursuant to the Consolidated Contract and fully satisfied all of its obligations owed to Westar under the Consolidated Contract.

107.    Westar was not thereafter allowed to unilaterally terminate or cancel the OCIP coverage.

108.    Westar nevertheless breached the Consolidated Contract by failing to ensure continued enrolment for the benefit of Team.

109.    The effect of Westar's conduct was to injure Team's right to receive the fruits of the Consolidated Contract, namely, to receive insurance coverage under the OCIP.

110.    Westar's breaches of the Consolidated Contract damaged and continues to damage Team in an amount to be determined at trial in excess of $75,000, including but not limited to the costs Team has incurred to defend the Texas Tort Case and any liability imposed on Team in the Texas Tort Case.

## COUNT V

### BREACH OF FIDUCIARY DUTY

### (Against Westar)

111.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

112.    As part of its 2013 enrollment application for the Westar OCIP, Furmanite agreed to rely on Westar to procure insurance and to keep that insurance in effect by paying premiums.

113.    Westar's control over procuring insurance for the OCIP and keeping it in effect extended to "Program policy(ies) as now written or as subsequently modified, rewritten or replaced."

114.    Westar contemplated that contractors, including Furmanite, would rely on Westar to procure insurance that would be available to those contractors should a claim arise from work those contractors performed at Westar's facilities.

115.    This relationship of reliance to provide and maintain insurance, first gave rise to a fiduciary duty between Westar and Furmanite.

116.    Following Team's acquisition of Furmanite by merger and the consolidation of the Furmanite Contract with the Team Contract, Westar's fiduciary duty to Furmanite survived the acquisition and contractual consolidation, and became a fiduciary duty owed to Team.

117.    If Team was not insured under the OCIP for the liability alleged in the Texas Tort Case, then Westar breached its fiduciary duty to Team in multiple ways, including, but not limited to:

        a.    By failing to enroll Team in the 2018 OCIP, despite Westar knowing that Team acquired Furmanite by merger and that Team would be performing the valve maintenance work for Westar in 2018 as a result of the merger and consolidation of the Furmanite Contract with the Team Contract;

b.  By failing to inform Team or Furmanite that Furmanite remained enrolled in the OCIP under its own name, even after Team acquired Furmanite by merger and the Furmanite Contract was consolidated with the Team Contract;

c.  By failing to inform Team or Furmanite that Team was not a named enrollee under the 2018 OCIP; and

d.  By failing to notify Team of any action that was required for Team to be enrolled instead of Furmanite in the 2018 OCIP.

118.    Westar's breach of fiduciary duty has damaged Team in an amount to be determined at trial in excess of $75,000, including but not limited to the costs Team has incurred to defend the Texas Tort Case and any liability imposed on Team in the Texas Tort Case.

<u>COUNT VI</u>

**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against Westar)**

119.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

120.    At all relevant times, Westar knew of the 2018 OCIP insurance contract issued by Zurich.

121.    At all relevant times, Westar knew that Team believed itself to be enrolled in the 2018 OCIP.

122.    At all relevant times, Westar knew that the valve maintenance work called for in the Furmanite Contract as consolidated into the Consolidated Contract historically had been covered by the OCIP.

123.    At all relevant times, Westar had knowledge that if the liability alleged in the Texas Tort Case was covered by the 2018 OCIP, and Team was a named insured, then Zurich would owe

a duty to defend Team, and Westar would be forced to pay a $500,000 deductible towards Team's defense.

124.    Upon information and belief, and pleading in the alternative, Westar, therefore, took unjustified steps to undermine Team's rights to coverage under the OCIP.

125.    For instance, upon information and belief, after the filing of this lawsuit, Westar, directly or through its agent Aon Risk Services Southwest, Inc., contacted one or more insurer and requested retroactive cancelation of coverage as to the enrollee mistakenly referred to as "Furmanite," knowing that Team claimed rights under all such insurance contracts as averred herein.

126.    Westar's interference with Team's actual, or in the alternative prospective, contractual relationship with Zurich has damaged Team in an amount to be determined at trial in excess of $75,000, including but not limited to the costs Team has incurred to defend the Texas Tort Case and any liability imposed on Team in the Texas Tort Case.

## COUNT VII
## QUASI-ESTOPPEL
### (Against Zurich and Westar)

127.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

128.    From 2013 through 2017, Westar implemented and maintained an OCIP that provided insurance coverage for the valve maintenance work at issue in the Texas Tort Case and called for in the Furmanite Contract, and Westar enrolled Furmanite in the OCIP each year.

129.    Effective September 1, 2017, following Team's acquisition of Furmanite by merger in 2016, Westar consolidated the Furmanite Contract with the Team Contract to create the resulting

Consolidated Contract, under which the same valve maintenance work called for in the Furmanite Contract was performed by Team.

130.    Westar and Zurich intended that work to be covered under the 2018 OCIP, as it had been under the 2013, 2014, 2015, 2016, and 2017 OCIPs, as demonstrated by their use of Furmanite's 2017 payroll for Team's anticipated work in 2018; by the calculating, charging, paying, and retaining the 2018 OCIP premium for that work; and by their use of the misnomer "Furmanite" in the 2018 OCIP.

131.    Westar's changed position following the June 2018 accident and resulting Texas Tort Case, that the valve work Team performed was no longer covered by the OCIP, that Team was not enrolled by virtue of the misnomer reference to its wholly-owned subsidiary Furmanite, and that Team was not intended to be enrolled in or insured by the OCIP, is so inconsistent with its prior position that the changed position is unconscionable.

132.    Likewise, Zurich's changed position following the June 2018 accident and resulting Texas Tort Case, that the valve work for which it charged, accepted, and retained a premium for the 2018 OCIP is not covered, is so inconsistent with its prior position that the changed position is unconscionable.

133.    Based on the foregoing, Team has been damaged and lacks an adequate remedy at law, and Westar and Zurich must be estopped from denying Team enrollment in and insurance coverage under the 2018 OCIP.

## COUNT VIII
### PROMISSORY ESTOPPEL
### (Against Zurich and Westar)

134.    Team incorporates and realleges the preceding paragraphs as though fully set out here.

135.    Pleading in the alternative, Zurich and Westar reasonably expected Team to perform work for Westar at the Jeffrey Energy Center under the Furmanite Contract as consolidated into the Consolidated Contract, promising that OCIP insurance coverage would cover Team's work, for which estimated payroll was used to calculate, collect, and retain a premium.

136.    Team did in fact perform work for Westar in reliance on the promises made by Westar and Zurich, that insurance would be provided under the 2018 OCIP for Team's work.

137.    Zurich has now denied coverage for Team under the OCIP, including a failure and refusal to defend Team in the Texas Tort Case, and Westar has denied that Team was supposed to be enrolled in the OCIP, thereby damaging Team in an amount in excess of $75,000 and resulting in substantial injustice.

138.    As a result of the foregoing, Team has no adequate remedy at law and the promises of enrollment in the OCIP and corresponding insurance coverage for Team's work at Westar's facility should be enforced.

WHEREFORE, Plaintiff Team Industrial Services, Inc. respectfully requests this Court enter judgment in its favor and against the defendants as follows:

a.    Declaring that the terms of the Furmanite Contract were consolidated and incorporated into the Team Contract, thereby entitling Team to be enrolled in, or establishing that Team should have been enrolled in the Westar OCIP for the 2018 policy period with respect to the work averred as the cause of damages in the Texas Tort Case;

b.    Declaring that Team was enrolled in the 2018 OCIP and is insured under the 2018 OCIP, including the policies issued by Zurich, Westchester, and Endurance;

c.  Declaring that Team is entitled to a defense for claims arising from the June 3, 2018 accident, including all claims asserted in the Texas Tort Case, under Zurich policy GLO 0220071 00;

d.  In the alternative, reforming Zurich Policy GLO 0220071 00 and associated OCIP documents to identify "Team Industrial Services, Inc." as enrolled in the 2018 Westar OCIP;

e.  Finding Zurich breached its insurance contract with Team, entitling Team to damages in excess of $75,000;

f.  Finding that Westar breached the Consolidated Contract, entitling Team to damages in excess of $75,000;

g.  Finding Westar breached its fiduciary duty owed to Team, entitling Team to damages in excess of $75,000;

h.  Finding Westar tortiously interfered with Team's contract with Zurich, entitling Team to damages in excess of $75,000;

i.  Finding Zurich and Westar are estopped from denying enrollment status and insurance coverage to Team under the 2018 OCIP; and

j.  Awarding Team its reasonable attorneys' fees, costs, interest, and any further relief, at law or equity, to which Team is entitled.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff Team, pursuant to Local Rule 40.2, hereby designates Kansas City, Kansas as the place of trial for the instant case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully Submitted,


**Team Industrial Services, Inc.**

*s/ Robert M. Pitkin*
Robert M. Pitkin              KS Bar #13868
Horn Aylward & Bandy, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone: (816) 421-0700
Facsimile: (816) 421-0899
rpitkin@hab-law.com


***Co-Counsel (admitted pro hac vice)***
Nolan C. Knight
Texas State Bar No. 24027125
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201
Telephone:  214.855.7500
Facsimile: 214.855.7584
nknight@munsch.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Service of the foregoing was effected via electronic transmission through the Court's ECF filing system this 23rd day of February, 2021 to all counsel of record and parties of interest participating in the CM/ECF system.

*s/ Robert M. Pitkin*
Attorney for Plaintiff