IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TEAM INDUSTRIAL SERVICES, INC, <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, et al., <br><br> Defendants. | Case No. 2:19-cv-02710-HLT-KGG |

## MEMORANDUM AND ORDER

This is a case brought by Plaintiff Team Industrial Services, Inc. against various parties regarding insurance coverage for work Team performed as a contractor for Defendant Westar Energy, Inc.[1] Westar moves to dismiss Team's claims against it for breach of contract, breach of fiduciary duty, tortious interference with contract, and quasi and promissory estoppel (Counts IV through VIII of the Second Amended Complaint). Doc. 174. For the reasons discussed below, Westar's motion is granted in part and denied in part. The motion is granted as to Team's claims against Westar for tortious interference with contract and quasi-estoppel (Counts VI and VII) and denied as to Team's claims against Westar for breach of contract, breach of fiduciary duty, and promissory estoppel (Counts IV, V, and VIII).

### I. BACKGROUND

#### A. Furmanite Contract

The following facts are taken from the well-pleaded allegations in Team's Second Amended Complaint. *See* Doc. 157. In 2010 Westar contracted with Furmanite America, Inc. to

---

[1] Westar is now known as Evergy Kansas Central, Inc.

perform valve maintenance work at Westar's Jeffrey Energy Center in St. Mary's, Kansas. *Id.* ¶ 16. In 2013, Westar executed a change order to the Furmanite contract. *Id.* ¶ 18. The 2013 change order extended the Furmanite contract through the end of 2018 and modified the language of the Furmanite contract to include a provision regarding an Owner Controlled Insurance Program ("OCIP"). *Id.* ¶¶ 19-20. An OCIP is a program where a project owner enrolls contractors and subcontractors in a common insurance policy. *Id.* ¶ 21. Under the Furmanite contract, Westar had the option to implement and maintain an OCIP, and if it did so, Westar was contractually obligated to maintain and continue OCIP coverage. *Id.* ¶ 22.

Westar enrolled Furmanite in the OCIP in 2013. *Id.* ¶ 24. Westar re-enrolled Furmanite in the OCIP for 2014 through 2018. *Id.* ¶ 25. Furmanite did not have to take any action for re-enrollment for 2014 through 2018. *Id.* ¶ 26.

### B.     Team's Merger With Furmanite

Team and Westar entered into a contract in 2010. *Id.* ¶ 27. Team's contract included work at Jeffrey Energy Center. *Id.* In 2016, Furmanite became a wholly-owned subsidiary of Team as a result of a merger. *Id.* ¶ 28. After the merger, Team filed a change-of-ownership form with the National Council on Compensation Insurance ("NCCI"). *Id.* ¶ 29. The NCCI ruled that the insurance ratings of Team and Furmanite were combinable and notified Zurich American Insurance Company of the decision. *Id.* ¶ 30.

In 2017, Westar issued a change order to the Team contract, which acknowledged that Furmanite had been acquired by Team. *Id.* ¶ 31. The 2017 change order stated, "This change order will consolidate the two services contracts that Furmanite (902236) and TEAM (902228) hold with Westar Energy and become **effective as of September 1, 2017**." *Id.*

2

The 2017 change order consolidated the Furmanite and Team contracts into one consolidated contract. *Id.* ¶ 32. The consolidated contract incorporated the scope of work and OCIP provisions of the Furmanite contract. *Id.* ¶ 33. And as of September 1, 2017, the valve maintenance work that had been performed under Furmanite's name was continued under the name "Team-Furmanite," and then "Team," as provided for by the consolidated contract. *Id.* ¶ 34. As of September 1, 2017, Team understood it would be the entity responsible for performing the valve maintenance work for Westar under the Furmanite contract as consolidated in the consolidated contract. *Id.* ¶ 74.

The 2017 change order did not terminate OCIP coverage. *Id.* ¶ 35. Westar's assumption of the OCIP obligation as to Furmanite was carried over into the consolidated contract. *Id.* Westar never indicated or provided notice that the valve maintenance work covered by the OCIP would no longer be covered, nor did Westar inform Team that it was required to independently enroll in the OCIP following the 2017 change order to continue having the valve maintenance work it was performing be covered by the OCIP under the consolidated contract. *Id.* ¶ 36. Westar's conduct regarding the consolidated contract led Team to believe that the valve maintenance work was insured by the OCIP. *Id.* ¶ 38. Team further alleges, "[u]pon information and belief," that Westar intended for the valve maintenance work to continue to be covered by the OCIP and intended that Team would succeed to the benefits of the OCIP previously provided to Furmanite. *Id.* ¶ 37.

C. **2018 OCIP Policy**

To purchase OCIP coverage for 2018, Westar submitted the estimated payroll for the valve maintenance work at the Jeffrey Energy Center to Zurich. *Id.* ¶ 39. Zurich is the insurance company who provided the policy for the OCIP. *Id.* ¶ 2. Submitting estimated payroll was a condition for Westar to obtain OCIP coverage from Zurich. *Id.* ¶ 40. The OCIP documents required that covered

3

contractors maintain and provide this information to Westar and Zurich. *Id.* Zurich used this information to calculate premiums, and Zurich categorized the payroll information by type of work, not by individual contractor. *Id.* ¶¶ 41-42.

Following the execution of the consolidated contract, Team continued submitting payroll information in 2018. *Id.* ¶ 44. Westar or its agency received Team's payroll information for 2018. *Id.* ¶ 46. The estimated payroll provided by Westar to Zurich to calculate the 2018 premium for the OCIP policy included valve maintenance work that Furmanite completed in 2017, and work that Team performed in 2018 under the consolidated contract. *Id.* ¶ 43. Westar never questioned Team's submission of payroll data or questioned why Team was providing it. *Id.* ¶ 47. Westar never advised that the OCIP coverage had been canceled before Team assumed responsibility for the valve maintenance work at the Jeffery Energy Center. *Id.* Westar never informed Team that estimated payroll information did not need to be provided because Team was not covered by the OCIP. *Id.* Zurich was ultimately charged, and Westar paid, premiums for a 2018 OCIP policy for the valve maintenance work performed under the Furmanite contract as consolidated into the consolidated contract. *Id.* ¶ 48. Zurich retained the premium payment and issued an OCIP policy effective January 1, 2018, through January 1, 2019, which covered all enrolled contractors doing work for Westar. *Id.* ¶¶ 49-50.[2]

Team alleges that it is a successor-in-interest to the Furmanite contract and a party to the consolidated contract and alleges that it performed valve maintenance work that was included in the scope of work outlined in the Furmanite contract as consolidated into the consolidated contract. *Id.* ¶ 53. Team performed this work under the reasonable belief it was insured under the 2018

---

[2] Defendants Westchester Fire Insurance Company and Endurance American Insurance Company issued policies that offered additional coverage respective to the Zurich policy. Doc. 157 at ¶¶ 51-52. Like Zurich, they are not part of this motion to dismiss.

4

renewal of the OCIP coverage based on the express terms of the consolidated contract, the parties' past practices, and the lack of notice by Westar that it was discontinuing OCIP coverage. *Id.* ¶¶ 54-55. Westar never informed Team it needed to take any action to be enrolled in the OCIP for 2018 regarding the valve maintenance work. *Id.* ¶ 56.

Team believes its valve maintenance work was covered by the 2018 OCIP policy because Furmanite had been enrolled in the OCIP for 2018, because Team accurately reported payroll information for OCIP coverage, and because Westar never replaced or offered to replace the coverage. *Id.* ¶¶ 57-58. At the time Furmanite was reenrolled in the OCIP policy for 2018, the obligations under the Furmanite contract were being performed by Team under the consolidated contract. *Id.* ¶ 61. Team alleges it justifiably relied on the consolidated contract to continue OCIP coverage for the benefit of Team, Westar to take all necessary steps to obtain insurance for the valve maintenance work, and Westar to advise Team if Team need to take additional action to procure insurance. *Id.* ¶ 60.

### D.     2018 Accident and Denial of OCIP Coverage

In April 2018, Team performed work at the Jeffrey Energy Center under the Furmanite contract as consolidated into the consolidated contract. *Id.* ¶ 62. On June 3, 2018, there was a fatal accident at the Jeffrey Energy Center. *Id.* ¶ 63. Team has been sued in Texas state court for negligence in performing the valve maintenance work under the Furmanite contact as consolidated into the consolidated contract. *Id.* ¶¶ 64, 73.

Team subsequently tendered its defense in the Texas lawsuit to Zurich based on liability coverage under the OCIP. *Id.* ¶ 65. On October 18, 2018, Zurich denied Team's tender on grounds that Team was not enrolled in the OCIP. *Id.* ¶ 66. Westar listed the name "Furmanite" instead of "Team" on the enrollment materials for the 2018 OCIP. *Id.* ¶ 67. Zurich denied coverage because

of this. *Id.* ¶ 68. Team contends that the designation of Furmanite as the enrolled contractor for the 2018 OCIP policy instead of Team is a scrivener's error that did not reflect the agreement of the parties. *Id.* ¶ 70.

Rather, Team alleges that both Team and Westar intended and expected that the valve maintenance work would continue to be covered under the OCIP through 2018. *Id.* ¶¶ 74-75. Westar's listing of Furmanite as the enrolled contractor on the 2018 OCIP policy reflects that Westar intended the valve maintenance work to be insured under the OCIP, and the fact that Team is a successor to Furmanite renders Team enrolled in the OCIP. *Id.* ¶ 75. Westar's naming of Furmanite on the 2018 OCIP policy was the result of Westar losing track of which entity was ultimately responsible for the valve maintenance work. *Id.* ¶ 76. Zurich also intended to continue coverage for the entity performing the valve maintenance work. *Id.* ¶ 77. Team alternatively claims the parties were mutually mistaken, and that Westar and Zurich intended Team to be enrolled in the OCIP, not Furmanite. *Id.* ¶¶ 78-81.

### E.   Claims Asserted by Team

Team filed this lawsuit against Westar, Zurich, Endurance, Westchester, and various individuals who are plaintiffs in the Texas lawsuit.[3] In Count I, Team seeks declaratory judgment against all Defendants that Team is entitled to a defense by the insurance companies under the 2018 OCIP policy. *Id.* ¶¶ 85-88. The remaining claims are against Zurich and Westar. *Id.* ¶¶ 89-138. Relevant here, Team sues Westar for breach of contract (Count IV), breach of fiduciary duty (Count V), tortious interference with contract (Count VI), and quasi and promissory estoppel (Counts VII, VIII). *Id.* ¶¶ 101-138.

---

[3]   All of the individual defendants who are plaintiffs in the Texas lawsuit, save for one, have been voluntarily dismissed. *See* Doc. 188. The remaining individual defendant is not a party to the motion to dismiss.

Westar moves to dismiss Counts IV-VIII against it. Doc. 174.[4]

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.   ANALYSIS

### A.   Count IV – Breach of Contract

In Count IV, Team alleges that the consolidated contract incorporated the OCIP provision from the Furmanite contract, which gave Westar the option to implement and maintain OCIP coverage for the valve maintenance work performed by Team in April 2018. Westar implemented

---

[4] Many of the arguments raised by Westar in its motion to dismiss were previously raised in Westar's 60-page opposition to Team's motion for leave to amend its complaint. Magistrate Judge Gale addressed and rejected Westar's futility arguments as to the claims now included in the Second Amended Complaint. *See generally* Doc. 152. Team argues that Westar's motion to dismiss is an improper attempt to re-litigate arguments previously rejected and that Westar should have sought reconsideration or review of Judge Gale's order. Doc. 182 at 7-15. The Court hopes the parties are mindful of judicial resources and Rule 1 moving forward. But the motion to dismiss is nevertheless procedurally distinct from Westar's opposition to Team's motion to amend even where the standards overlap.

and maintained OCIP coverage for the valve maintenance work through 2018, and Team performed the work. But Westar breached the consolidated contract by failing to ensure Team's continued enrollment in the OCIP policy, to Team's detriment.   Doc. 157 at ¶¶ 101-110.

Under Kansas law, a breach-of-contract claim requires a showing of the following elements: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006).

As Westar acknowledges, *see* Doc. 183 at 4, Team has alleged that Furmanite was enrolled in the OCIP and that Westar had a duty to keep Furmanite in the OCIP. Team then acquired Furmanite and began performing the work Furmanite had done pursuant to its original contract under the consolidated contract. But Westar failed to ensure that Team was covered by the OCIP, something Team alleges was a breach of Westar's obligation under the consolidated contract. These allegations are sufficient to state a plausible breach-of-contract claim. To the extent Westar argues that its actions toward Furmanite have no bearing on whether it had a contractual obligation toward Team, that is precisely what the Second Amended Complaint alleges—that Westar did have an obligation toward Team because Westar consolidated Team's and Furmanite's respective contracts.

Westar argues that Team's breach-of-contract claim should be dismissed because Team hasn't pleaded a specific contractual provision that Westar breached. Westar then discusses various provisions in the Furmanite and Team contracts from 2010. But Team does not assert any breach of contract claim based on these initial versions of the contracts. The claim is based on the 2013

8

change order to the Furmanite contract, which was then consolidated into the consolidated contract.

Westar further argues that the 2013 change order to the Furmanite contract only gave Westar the option—not the obligation—to enroll Furmanite for OCIP coverage. But Westar does not address Team's allegation that Westar did exercise this option, which then apparently required it to maintain OCIP coverage for the relevant valve maintenance work from 2013 through 2018. *See* Doc. 157 at ¶¶ 104-105. To the extent Westar retained a right to terminate OCIP coverage, there are no factual allegations in the Second Amended Complaint that Westar ever exercised that right.

Accordingly, the Court finds Team has plausibly alleged a breach-of-contract claim against Westar.

### B.     Count V – Breach of Fiduciary Duty

In Count V, Team alleges Westar breached its fiduciary duty because contractors had to rely on Westar to procure OCIP insurance, Westar agreed to provide and maintain OCIP insurance to Furmanite, and Westar had a similar fiduciary duty to Team following Team's acquisition of Furmanite. To the extent Westar failed to enroll Team in the OCIP policy for 2018 or otherwise notify Team or Furmanite that Team was not enrolled, Team contends that is a breach of fiduciary duty. *Id.* ¶¶ 111-118.

Under Kansas law, "the essential elements of a breach of fiduciary duty claim are duty, breach, causation, and damages." *Osage Cap., LLC v. Bentley Invs. of Nevada III, LLC*, 2014 WL 902189, *7 (Kan. Ct. App. 2014). A fiduciary duty may be "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Rajala v. Allied Corp.*, 919 F.2d 610, 614 (10th Cir. 1990) (quoting

9

*Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982)). This depends on the facts and circumstances of the case. *Id.* Factors considered are whether a "peculiar confidence [is] placed by one individual in another," whether a person has "a duty to act primarily for the benefit of another," where a person has and can "exercise influence over another" or has "superiority" over the them, and whether "the property, interest or authority of the other is placed in the charge of the fiduciary." *Id.* (quoting *Denison*, 640 P.2d at 1241) (emphasis omitted). But the key consideration is whether there was "a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Id.* (quoting *Denison*, 640 P.2d at 1243-44).

Westar argues that none of the contracts at issue say anything about fiduciary duties, and thus Team has failed to allege that Westar consciously assumed a fiduciary duty to Team. The Court disagrees. Team has alleged that Furmanite agreed to rely on Westar to procure OCIP coverage. Doc. 157 at ¶ 112. Westar had control over procuring OCIP coverage and maintaining it. *Id.* ¶ 113. Team also alleges that "Westar contemplated that contractors, including Furmanite, would rely on Westar to procure insurance that would be available to those contractors should a claim arise from work those contractors performed at Westar's facilities." *Id.* ¶ 114. Team alleges that this gave rise to a fiduciary duty between Westar and Furmanite, which became a duty owed to Team following the merger and consolidation of the Furmanite and Team contracts. *Id.* ¶¶ 115-116. Given the other factual allegations about Westar's actions towards Furmanite regarding the OCIP policy and the consolidated contract, this sufficiently alleges that Westar assumed a fiduciary duty to Furmanite, and subsequently to Team.[5]

---

[5] Westar states in its motion that "[t]o find a fiduciary relationship here, in the complete absence of any contractual obligation, or conscious assumption of that role by Westar, would be to vastly expand the duties of parties to a routine commercial transaction." Doc. 175 at 22. But at this stage of the case, the Court is only finding that Team has plausibly alleged the existence of such a duty. Whether it will prevail on this claim is another issue for another day.

Westar also argues that there is no authority supporting the position that an assumption of a fiduciary duty to a subsidiary corporation (Furmanite) extends to the parent company (Team). But the Court does not read the Second Amended Complaint to state such a theory. Team claims Westar owed it a fiduciary duty through the consolidated contract, not solely because Team is Furmanite's parent company.

Accordingly, the Court finds Team has plausibly stated a claim against Westar for breach of fiduciary duty.[6]

### C.   Count VI – Tortious Interference With Contract

Count VI of Team's Second Amended Complaint alleges that Westar knew of the 2018 OCIP policy issued by Zurich and that Team believed itself enrolled in that policy. Team also alleges that Westar knew that if Zurich was obligated to defend Team in the Texas lawsuit, Westar would owe a $500,000 deductible. Team alleges that Westar therefore took steps to undermine Team's right to coverage, including contacting one or more insurers after this lawsuit was filed to request retroactive cancelation of coverage as to the enrollee mistakenly listed as Furmanite, all while knowing Team claimed rights to such coverage. *Id.* ¶¶ 119-126.

"In Kansas, the elements of a claim for tortious interference with contract are '(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.'" *Swimwear Sol.*, 309 F. Supp. 3d at 1039 (quoting *Diederich*, 196 P.3d at 418).

---

[6] Under Kansas law, "tort claims such as breach of fiduciary duty can be pleaded in parallel with breach-of-contract claims only if the tort is independent of the bargained-for duties in the contract." *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1032 (D. Kan. 2018). Likewise, "the independent tort must cause damages beyond those suffered by breach of contract." *Diederich v. Yarnevich*, 196 P.3d 411, 420 (Kan. Ct. App. 2008). Although Westar argues that fiduciary duties should not be imposed on ordinary commercial transactions, *see* Doc. 175 at 20, neither party meaningfully addresses whether Team is alleging a fiduciary duty that is independent of the rights it asserts under the consolidated contract or whether Team has alleged additional damages. In the absence of arguments on this subject, the Court will permit Team's breach-of-fiduciary-duty claim to go forward at this stage.

11

As to this claim, the parties seem to agree that the alleged contract is the 2018 OCIP policy by Zurich that would ostensibly cover the accident at issue. And they likewise agree that the alleged interference is that, "after the filing of this lawsuit," Westar contacted "one or more insurer and requested retroactive cancelation of coverage" of the 2018 OCIP policy as to Furmanite. *See* Doc. 157 at ¶ 125.

Westar argues that Team fails to state a claim for tortious interference with the 2018 OCIP policy because Team has not alleged that any action by Westar actually caused Furmanite's status under the 2018 OCIP policy to change, or that its actions caused Zurich to breach the 2018 OCIP policy by denying coverage to Team. Westar contends that the alleged act of interference took place after this case was filed, and by that time, Zurich had already denied coverage.

The Court agrees with Westar that Team has failed to plead a plausible claim of tortious interference. "[A]n action for tortious interference with contract does not extend to claims of adverse impact or increased burden which fall short of inducing or causing actual breach." *Swimwear Sol.*, 309 F. Supp. 3d at 1040 (brackets in original). Team has not alleged that the act of interference—seeking retroactive cancelation of the 2018 OCIP policy in Furmanite's name— actually led to the cancelation of the 2018 OCIP policy in Furmanite's name. To the extent Team contends this action caused Zurich to deny coverage to Team, the alleged act of interference did not even occur until after Team filed this lawsuit, by which time Zurich had already denied coverage. Accordingly, Team has failed to plead a claim for tortious interference because it has not pleaded any facts showing that Westar actually procured the breach of any contract Team had with Zurich or any other insurer.

Team argues that it is unfair to assume that the "'retroactive' meddling" alleged in the Second Amendment Complaint is the only act of interference. Doc. 182 at 28. But it is the only

12

act of interference pleaded. One act of "meddling" that apparently did not lead to the breach of any contract and which occurred after coverage was denied cannot serve as placeholder for a future claim that might be uncovered in discovery. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Team also argues that it may still be suffering adverse consequences from Zurich's denial of coverage under the 2018 OCIP policy. Doc. 182 at 28-29. But even if Team may be facing potential future harm as a result of having no insurance coverage, Team has failed to plead facts suggesting that this potential future harm is attributable to an act of interference by Westar. As Westar points out, there are no facts alleging that Westar's request for retroactive cancelation of the policy under Furmanite's name actually caused Zurich or "one or more insurer" to actually take that action.

Accordingly, Westar's motion as to Count VI is granted. Count VI is dismissed without prejudice.

### D.  Counts VII and VIII – Quasi and Promissory Estoppel

In Counts VII and VIII, Team alleges that Westar implemented and maintained OCIP coverage for the valve maintenance work as called for by the Furmanite contract. Westar then consolidated Furmanite's and Team's contracts into the consolidated contract, under which the valve maintenance work previously performed under the Furmanite contract was performed by Team. Westar intended that work to be covered by the 2018 OCIP policy, but then it changed its position following the accident. Team alleges this change in position is unconscionable and Westar must be estopped from denying Team's enrollment in the 2018 OCIP policy. Doc. 157 at ¶¶ 127-

133 (quasi-estoppel claim).[7] Alternatively, Team alleges that Westar expected Team to perform under the Furmanite contract as consolidated into the consolidated contract while promising that OCIP coverage would apply to Team's work. Team performed the work in reliance on that promise, and Westar's denial that Team was enrolled in the OCIP has damaged Team. *Id.* ¶¶ 134-138 (promissory-estoppel claim).

### 1.  **Quasi-Estoppel**

Westar argues the quasi-estoppel claim must be dismissed because it is not a stand-alone cause of action and because Team has not asserted that Westar took a position that was inconsistent with a later articulated position, let alone one that shocks the conscience.

Quasi-estoppel "involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which [the person] has acquiesced." *Chelf v. State*, 263 P.3d 852, 862 (Kan. Ct. App. 2011) (internal quotation and citation omitted) (brackets in original). Regarding whether quasi-estoppel is a stand-alone claim, Judge Gale previously stated it was not but allowed Team to amend its complaint to include estoppel arguments as "equitable principals applied within" other claims. Doc. 152 at 28. Westar now seeks dismissal in part because quasi-estoppel is not a stand-alone claim. Team does not address this issue in its response.

The Court notes the quasi-estoppel claim does not seek any relief. It only argues that Westar's position regarding Team's enrollment in the OCIP is inconsistent with its prior position, and the change in position is unconscionable. This is effectively a legal argument to any defense Westar may raise. *See Oxy USA, Inc. v. Red Wing Oil, LLC*, 360 P.3d 457, 464 (Kan. Ct. App.

---

[7]  The quasi-estoppel and promissory-estoppel claims are also asserted against Zurich. But only Westar moves to dismiss.

14

2015) (noting that quasi-estoppel, or acquiescence, "precludes a party from taking a legal position . . . inconsistent with past actions"). To the extent Team intends to argue as much in the context of other claims, it may do so. But Team has not demonstrated that it has plausibly alleged a valid <u>cause of action</u> for quasi-estoppel sufficient to survive a motion to dismiss. Accordingly, Westar's motion to dismiss as to Team's claim for quasi-estoppel (Count VII) is granted. Count VII is dismissed without prejudice.

### 2. Promissory Estoppel

As to its promissory-estoppel claim, Team argues that it is attempting to "invoke estoppel principles in the purported absence of sufficiently specific contractual terms." Doc. 182 at 30. Based on this, it appears Team seeks to rely on promissory estoppel as an alternative to its breach-of-contract claim. Westar argues that the promissory-estoppel claim must be dismissed because the parties' relationship is governed by contract, and those contracts clearly delineate the parties' rights as to OCIP coverage and don't afford Team any entitlement to OCIP coverage.[8]

"Promissory estoppel is an alternative theory of recovery to a breach of contract claim." *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1167 (D. Kan. 1990). A party may resort to promissory estoppel where proof of an essential element of a contract fails. *Id.* "Promissory estoppel is a doctrine by which courts view performance in reasonable reliance on a promise as sufficient to create a legally binding contract where a contract otherwise lacks consideration." *Sch.-Link Techs., Inc. v. Applied Res., Inc.*, 471 F. Supp. 2d 1101, 1114 (D. Kan. 2007). The elements of promissory estoppel are: "a) defendant made a promise, b) the promise was made under circumstances where the promisor intended and reasonably expected the promise would be relied

---

[8] Westar does not argue that promissory estoppel is not a stand-alone cause of action like it does Team's quasi-estoppel claim.

upon by the promisee, c) the promisee acted reasonably in reliance on the promise, and d) a refusal to enforce the promise would result in an injustice." *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 (10th Cir. 1990) (internal citation omitted).

As noted above, Westar seeks to dismiss the promissory-estoppel claim because the parties' relationship is governed by a contract that establishes the parties' rights regarding OCIP coverage. But Westar's argument on this point is premised on the Court accepting its version of the parties' contractual relationship, which is not proper at this stage of the case on a motion under Rule 12(b)(6). As the Court has found regarding Team's breach-of-contract claim, Team has alleged that Westar agreed to obtain and maintain OCIP coverage for the work Team ultimately performed under the consolidated contract, and then failed to do so.

Team alternatively alleges in its promissory-estoppel claim that Westar expected Team to perform certain work at the Jeffrey Energy Center and promised that Team's work would be covered under the OCIP policy. Doc. 157 at ¶ 135. Team alleges it performed the work in reliance on that promise, and Westar subsequently denied that Team was supposed to be enrolled in the OCIP, which has damaged Team. *Id.* ¶¶ 136-138. This is sufficient to state an alternative claim for promissory estoppel. *See In re Auto Body Shop Antitrust Litig.*, 2015 WL 4887882, at *22 (M.D. Fla. 2015) ("[P]romissory estoppel lends itself to enforcement as a cause of action in a way quasi-estoppel does not, because promissory estoppel involves the enforcement of a promise, while quasi-estoppel merely operates to prevent an opposing party from taking a particular position."). Accordingly, Westar's motion to dismiss as to Team's promissory-estoppel claim (Count VIII) is denied.

16

## IV.  CONCLUSION

The Court finds that Team has plausibly stated a claim against Westar for breach of contract, breach of fiduciary duty, and promissory estoppel (Counts IV, V, and VIII). Team has failed to plausibly allege tortious interference with contract or state a claim for quasi estoppel (Counts VI and VII).

THE COURT THEREFORE ORDERS that Defendant Westar's Motion to Dismiss Counts IV, V, VI, VII, and VIII of Plaintiff's Second Amended Complaint (Doc. 174) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Count VI (tortious interference with contract) and Count VII (quasi-estoppel). These claims are dismissed without prejudice. The motion is DENIED as to Counts IV, V, and VIII (breach of contract, breach of fiduciary duty, and promissory estoppel).

IT IS SO ORDERED.

Dated: August 25, 2021                                  /s/ *Holly L. Teeter*
                                                                HOLLY L. TEETER
                                                                 UNITED STATES DISTRICT JUDGE